In the Matter of NEW COBLESKILL ASSOCIATES, L. P., Appellant, v ASSESSORS OF THE TOWN OF COBLESKILL et al., Respondents. (And Another Related Proceeding.) [720 NYS2d 231] —Peters, J. Appeal from an order of the Supreme Court (Hughes, J.), entered December 23, 1999 in Schoharie County, which, *inter alia*, in two proceedings pursuant to RPTL article 7, granted respondents' motion to confirm the Referee's report.

In November 1994, petitioner purchased a shopping center located in the Town of Cobleskill, Schoharie County (hereinafter the property), for $3.1 million. In both 1996 and 1997, the two years under review, the property's assessed valuation, for taxation purposes, was $4,629,900. Upon petitioner's challenge to those assessments, Supreme Court appointed a Referee to hear and report on the matter.

At the hearing, petitioner offered the testimony of, among others, William Beckman, a certified general real estate appraiser, to expound upon his written appraisal report which had valued the property's fee simple estate at $3.4 million for the subject years. Finding the purchase to be an "arms' length transaction" and, therefore, a prime indicator of market value, Beckman noted that Jamesway, a commercial tenant occupying 43,200 square feet of such property, vacated the premises in February 1996, thus rendering the premises 40% vacant. Although a portion of the Jamesway space was eventually leased to Central Tractor Farm & Country, thereby reducing the vacancy rate to 19.1% for 1997, testimony established that the proximity of this property to a new Wal-Mart store negatively impacted its overall retail value. While noting that at the time

of sale, Price Chopper, a tenant at such property, agreed to undertake substantial structural improvements at a cost of almost $2,600,000, and that plaintiff agreed, in turn, to invest $400,000 toward general shopping center upgrades, Beckman nonetheless opined that although these investments enhanced the value of the parcel, it would not impact upon his assessment.

Beckman testified that he considered numerous valuation methods including the comparable sales approach. While he believed that such approach may be a primary indicator of market value when properties are not being purchased for their income-producing character, without the operating data and sales projections for these properties—information not generally available to an appraiser—he opined that the income capitalization approach* is more reliable. By such method, he valued the property for both 1996 and 1997 at $3.4 million.

The testimony of Leonard Berdan, a State-certified general appraiser, was offered in response. In his appraisal report, the property was valued by three different methods—the cost approach, the income capitalization approach and the comparable sales approach. Based on the comparable sales approach, Berdan estimated its value to be $3,465,000 for 1996 and $5,560,000 for 1997, attributing the increase to the approximately $3 million in renovations completed at the subject property. Utilizing the income capitalization approach, Berdan found the 1996 value to be $3,575,000 and the 1997 value to be $5,415,000. Reconciling these estimates into one value, Berdan opined that the market supports a value of $3,500,000 for 1996 and $5,500,000 for 1997.

At the conclusion of the hearing, the Referee found that petitioner failed to rebut the presumptive validity of the tax assessments under review due to its failure to utilize the comparable sales approach in valuing the property. The Referee's report was filed with Supreme Court in November 1999 which, after proper motion, was confirmed. Petitioner appeals.

While "[i]t is well settled that a tax assessment fixed by a local tax assessor carries with it a presumptive validity" (*Matter*

---

* The income capitalization approach requires an appraiser to formulate a value estimate for the property by converting projected net income into a single present value. To do so, the market rent for the subject property must be estimated and then, from available market data, the appraiser must estimate a property allowance for vacancy and credit loss forecast to occur during the period of ownership. Further estimating and projecting anticipated fixed and operating expenses during the ownership, the appraiser is last left to select and apply an appropriate capitalization rate.

*of State of New York v Town of Hardenburgh*, 273 AD2d 769, 771; *see, Matter of FMC Corp. v Unmack*, 92 NY2d 179, 187), this presumption can be overcome if the challenger proffers substantial evidence that the property has been overvalued (*see, Matter of FMC Corp. v Unmack, supra*, at 187). With substantial evidence deemed "a minimal standard * * * [which] requires less than 'clear and convincing evidence' * * * and less than proof by 'a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt' " (*id.*, at 188 [citations omitted]), petitioner must still "demonstrate the existence of a valid and credible dispute regarding valuation" (*id.*, at 188).

Contrary to the determination of Supreme Court, we find that petitioner sufficiently rebutted the presumptive validity of the tax assessments. Aside from the recent purchase price of the property (*see, Matter of Stock v Baumgarten*, 211 AD2d 1008, 1010), we note that both the testimony and report prepared by Beckman was based on " 'sound theory and objective data' " (*Matter of FMC Corp. v Unmack, supra*, at 188, quoting *Matter of Commerce Holding Corp. v Board of Assessors*, 88 NY2d 724, 732), establishing the existence of a "valid and credible dispute regarding valuation" (*Matter of FMC Corp. v Unmack, supra*, at 188). Since "there is no fixed method for determining * * * value [and] * * * [a]ny fair and nondiscriminating method that will achieve that result is acceptable" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356), the Referee's emphasis on Beckman's failure to utilize the comparable sales method of valuation merely went to the weight of the evidence which is "not a relevant consideration at this juncture" (*Matter of FMC Corp. v Unmack, supra*, at 188).

Reviewing the underlying merits " 'to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued' " (*Matter of Wolf Lake v Board of Assessors*, 271 AD2d 925, quoting *Matter of FMC Corp. v Unmack, supra*, at 188; *see, Matter of Stock v Baumgarten, supra*, at 1009), we acknowledge that "[t]he best evidence of value * * * is a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy" (*Matter of Allied Corp. v Town of Camillus, supra*, at 356; *see, Matter of Stock v Baumgarten, supra*, at 1010). Here, both experts agreed that as of the January 1, 1996 valuation date for the 1996 tax year, the property was overvalued; their appraised values indicate a $100,000 disparity.

Yet, in "weigh[ing] the entire record, including evidence of

claimed deficiencies in the assessment" (*Matter of FMC Corp. v Unmack, supra,* at 188), we do not find that petitioner has sustained its burden of demonstrating an overvaluation for the 1997 tax year. The documentary and testimonial evidence indicates that after the January 1, 1996 valuation date, yet before such date for the 1997 tax year, approximately $3 million in structural improvements were implemented. Since "[t]he ultimate purpose of valuation * * * [in] tax certiorari proceedings[ ] is to arrive at a fair and realistic value of the property involved so that all property owners contribute equitably to the public fisc" (*Matter of Allied Corp. v Town of Camillus, supra,* at 356), we do not find that petitioner has demonstrated, by a preponderance of the evidence, that these improvements should not impact, in any manner, upon an assessment of the property during such taxable year. With respondents' assessed value reflecting these improvements when based on the comparable sales approach, a "preferred measure of a property's value for assessment" (*id.,* at 356), and further recognizing that such valuation remained lower than that fixed by the local assessor, we would reduce the assessment for the 1996 tax year to $3.5 million. Further, notwithstanding petitioner's success in overcoming the presumptive validity of the subject tax assessments, petitioner's failure to sustain its burden of demonstrating, on the merits, that the property was overvalued for the 1997 year warrants our dismissal of that proceeding.

Cardona, P. J., Mercure, Crew III and Rose, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as granted respondents' motion to confirm the Referee's report regarding petitioner's 1996 real property tax assessment; said assessment reduced for the 1996 tax year to $3.5 million; and, as so modified, affirmed.