■ In the Matter of the City of Troy, Respondent, v Town of Pittstown et al., Appellants, and Brittonkill Central School District et al., Respondents. (And Two Other Related Proceedings.) [762 NYS2d 651] —Spain, J. Appeal from an order of the Supreme Court (Canfield, J.), entered March 28, 2002 in Rensselaer County, which granted petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce tax assessments on certain real property owned by petitioner.

Pursuant to RPTL article 7, petitioner City of Troy commenced proceedings to reduce its 1996, 1997 and 1998 real property tax assessments on approximately 2,800 acres of property located in the Town of Pittstown, Rensselaer County. The property, known as the Tomhannock Reservoir, is petitioner's major water source, as well as a source of revenue derived from water sales to other municipalities, and is comprised of five separately designated tax parcels. Following a trial, Supreme Court found that respondents Town of Pittstown,

Town Assessor of the Town of Pittstown and Board of Assessment Review of the Town of Pittstown (hereinafter collectively referred to as respondents) had overassessed petitioner's property for all the years in question and, with some modification, adopted petitioner's valuation figures.[1] Respondents appeal, and we now affirm.

As an initial matter, we reject respondents' assertion that Supreme Court erred in accepting the qualifications of George Sansoucy, a New Hampshire licensed engineer retained by petitioner to give expert testimony concerning the cost of reproducing the dam and other improvements on the subject property. Respondents rely on our decision in *Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors* (280 AD2d 724 [2001], *lv denied* 96 NY2d 719 [2001]) as establishing that Sansoucy lacked qualified expertise to testify in this matter. In that case Supreme Court found Sansoucy unqualified to testify as an expert appraiser of real property. On appeal, we merely held that, on the record before us, Supreme Court had not abused its discretion in rejecting Sansoucy's testimony as a real estate appraiser, and specifically noted that Supreme Court had not found him unqualified to testify as an engineer (*id.* at 726-727). Here, petitioner employed a separate, qualified land appraiser and relied on Sansoucy's testimony only to establish the reproduction cost and depreciation of the improvements. "Key to calculating value using the reproduction cost method is a working knowledge of current construction costs and methods and the ability to perform a detailed analysis of the structure being appraised" (*Matter of Guilderland Ctr. Nursing Home v Town of Guilderland Bd. of Assessment Review*, 195 AD2d 902, 903 [1993]; *see Matter of Lia v Town of Niskayuna*, 300 AD2d 876, 878 [2002]; *Matter of Fistraw-Del Holding Corp. v Assessor for Town of Colonie*, 235 AD2d 660, 662 [1997]). The record amply supports Supreme Court's conclusion that Sansoucy—a licensed engineer with experience in the construction, operation and valuation of hydroelectric facilities including dams and reservoirs—had sufficient expertise to qualify him to testify as an engineer expert witness and render an opinion regarding reproduction cost and depreciation (*cf. Matter of Tennessee Gas Pipeline Co. v Town*

---

1. Supreme Court credited the testimony of petitioner's experts and adopted their recommended assessments, with the exception of finding—contrary to the testimony of petitioner's expert engineer who stated that he believed all of the improvements were located within the Town of Pittstown—that only 87% of the improvements are located in the Town of Pittstown, the remaining 13% located in the neighboring Town of Schaghticoke in Rensselaer County. This finding is not in dispute on appeal.

*of Sharon Bd. of Assessors*, 298 AD2d 758, 759 [2002], *lv denied* 99 NY2d 506 [2003]).

We begin our analysis of respondents' substantive challenges to Supreme Court's decision with the proposition that "a locality's tax assessment is presumptively valid [but] a petitioner may overcome that presumption by bringing forth substantial evidence that its property has been overvalued" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998] [citation omitted]). "In the context of tax assessment cases, the 'substantial evidence' standard merely requires that petitioner demonstrate the existence of a valid and credible dispute regarding valuation" (*Matter of FMC Corp. v Unmack*, 92 NY2d 179, 188 [1998]). Where a petitioner successfully rebuts the presumed validity of the assessment, "a court must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*id.* at 188). On appeal, this Court is constrained to defer to Supreme Court's decision "unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or unless it appears that the court * * * has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate" (*Matter of City of New York [Newtown Cr.]*, 284 NY 493, 497 [1940]; *see Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors, supra* at 726).

At trial, petitioner relied on the testimony of William Hafner, a real estate appraiser retained to value the five parcels which are the subject of these challenges. Using the market data method to appraise the land and identifying four comparable properties to the subject parcels, Hafner valued the subject land for each year at issue at $2,099,000. Sansoucy then testified for petitioner, valuing the improvements to the property, including a dam, intake structure and some 2,400 feet of underground tunnel using the reproduction cost new less depreciation methodology and concluding that the total values for the subject improvements after applicable depreciation amounts are deducted are $3,969,101 (1996), $4,023,173 (1997) and $4,076,064 (1998). These land and improvement valuation figures are roughly half of those found in respondents' appraisals. Thus, petitioner met its burden of establishing the existence of a "valid and credible dispute regarding valuation," overcoming the presumption that the assessments are valid (*Matter of FMC Corp. v Unmack, supra* at 188; *see Matter of Lia v Town of Niskayuna, supra* at 877).

We turn, therefore, to the question of whether Supreme Court's finding that petitioner established overvaluation by a preponderance of the evidence is against the weight of the evidence (*see Matter of Lia v Town of Niskayuna, supra*). Respondents assert that Supreme Court erred in accepting petitioner's estimate of the dam's useful life. Competing evidence at trial placed the dam's useful life at between 150 to over 300 years. Noting some inconsistency in respondents' expert's position on this fact, Supreme Court adopted petitioner's position that the dam has a useful life of 200 years, and we see no abuse of discretion in Supreme Court's decision to resolve the difference in expert opinion in favor of petitioner (*see Matter of Adirondack Hydro Dev. Corp. [Warrensburg Bd. & Paper Corp.]*, 205 AD2d 925, 926 [1994]).

Respondents also contend that the reconstruction cost estimates relied upon by petitioner are methodologically unsound, finding fault with, among other things, the fact that petitioner's land appraiser and engineer prepared mutually exclusive reports. We reject this contention. "There is no prohibition on separate valuations of land and improvements" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Minetto*, 221 AD2d 910, 911-912 [1995]) and, here, the record demonstrates that the experts coordinated their work to some extent, i.e., Sansoucy accompanied Hafner on excursions to comparable properties to determine which would be suitable for development as a reservoir (*see Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d 558, 559 [1999]). Respondents further assert that, in calculating the reproduction costs, petitioner's expert engineer improperly designated profit and overhead as indirect, or "soft" costs, rather than direct costs, that he underestimated the indirect costs associated with surveys, permitting and environmental testing, and that his failure to include a contractor's contingency fee was erroneous. Although respondents submitted expert testimony which supports their position on these issues, the record shows that Supreme Court carefully considered each issue and gave appropriate weight to the proffered evidence. Accordingly, we will not disturb Supreme Court's decision to credit the testimony of petitioner's expert (*see Kane-Miller Corp. v Salkin*, 226 AD2d 1028, 1030-1031 [1996]; *Matter of Adirondack Hydro Dev. Corp. [Warrensburg Bd. & Paper Corp.], supra* at 926).

With respect to the land valuation, respondents contend that petitioner's comparables are too dissimilar to the property to yield an accurate value. "A comparable sale need only be 'suf-

ficiently similar to serve as a guide to the market value of the [subject property], notwithstanding differences between these comparables and the [subject] property' " (*Matter of FMC Corp. v Unmack*, 92 NY2d 179, 189 [1998], *supra*, quoting *Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 732 [1986]). Petitioner relied on four comparable properties ranging in acreage from approximately 174 to 925 acres, one of which is in the Town of Pittstown and the others within a 60-mile radius. Although respondents take issue with the failure of petitioner to rely on parcels in the Town of Pittstown, petitioner's expert land appraiser justified the use of properties from other geographic regions because it was impossible to find parcels of comparable acreage which would be suitable for the construction of a reservoir in closer proximity. While respondents' appraisal was based on 22 comparables all located in the Town of Pittstown, the acreage of said parcels ranged from approximately 11 acres to 113 acres and the majority of these parcels consisted of 22 acres or less.[2] In addition, the parcels petitioner's appraiser utilized all contained basin-like topography, a water source and a means of access, factors relied upon as relevant to the use of the property as a reservoir. Under these circumstances, we find no error in Supreme Court's determination that petitioner was justified in relying on land sales beyond the immediate vicinity of the subject property (*see Matter of General Elec. Co. v Town of Salina, supra* at 731; *Welch Foods v Town of Westfield*, 222 AD2d 1053, 1054-1055 [1995]). Further, the adjustments employed in petitioner's appraisal were sufficiently explained and supported in the record. In particular, we find no error in the adjustment made to reflect the statutory limit imposed on the marketability of the property (*see* General City Law § 20).

Likewise, we conclude that petitioner's appraiser justified his decision not to employ a plottage, or assemblage, factor in setting a value. Plottage is a percentage added to the aggregate value of two or more contiguous lots to represent an increased value resulting from the aggregation of separate parcels (*see Matter of Erlanger*, 237 NY 159, 163 [1923]). In our view, sufficient evidence supports Supreme Court's crediting petitioner's expert and concluding that a plottage factor was unnecessary here because the independent parcels were actually more marketable than their aggregate, given the practical and legal limitations on marketing the reservoir.

---

2. The five parcels which are the subject of the instant challenge contain acreages of 977.09, 407.13, 1,042.17, 43.75 and 388.7 for a total of approximately 2,800 acres.

Finally, respondents object because petitioner's appraiser valued the property as five separate parcels, rather than a single economic unit. Albeit in a different context (i.e., multibuilding industrial property), the Court of Appeals has stated that the determination to value property as a single entity or the aggregate of several components "is essentially a factual determination of the most economically and physically feasible use of the complex, and whether the taxing authority should assess such properties on the basis of a subdivision theory depends upon the circumstances of the particular case and the evidence offered in support of the proposition that the particular facility could be subdivided and sold in parts" (*Matter of General Elec. Co. v Town of Salina, supra* at 732; *see Matter of Ulster Bus. Complex v Town of Ulster*, 293 AD2d 936, 939-940 [2002]; *but cf. Matter of Stock v Baumgarten*, 211 AD2d 1008, 1009 [1995]). In accepting petitioner's appraisal, Supreme Court found that, if the five parcels had been valued as a single unit, the resulting land value would have been lower. As this finding has support in the record, we need not determine whether the land should have been valued as a single economic unit.

We have considered respondents' remaining contentions and find them to be without merit.

Crew III, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.