In the Matter of ECKERD CORPORATION, Individually and on Behalf of COLUMBIA PLAZA, LLC, Respondent, v CHRIS SEMON, as Assessor of the Town of Colonie, et al., Appellants, et al., Respondent. (And Another Related Proceeding.) [829 NYS2d 238]—

Spain, J. Appeal from a judgment of the Supreme Court (Spargo, J.), entered July 5, 2005 in Albany County, which granted petitioner's applications, in two proceedings pursuant

to RPTL article 7, to reduce tax assessments on certain real property leased by petitioner.

In these proceedings, petitioner challenges the 2002 and 2003 real property tax assessments of property located in the Town of Colonie, Albany County which is owned by Columbia Plaza, LLC and leased by petitioner. The property is a corner lot located in a commercial area of the Town and is improved by a freestanding Eckerd retail drug store with a drive-through window and parking lot. In 2002, the property consisted of 4.7 acres and was assessed at $2,600,000. Due to a subdivision of the parcel in 2003, the property's acreage was reduced to 1.8 acres and was thereafter assessed at $2,300,000.

In support of the petitions in these RPTL article 7 proceedings, petitioner submitted the appraisal report of Chris Harland, who valued the property at $1,950,000 for 2002 and $1,550,000 for 2003. In response, respondents Chris Semon and Board of Assessment Review of the Town of Colonie (hereinafter collectively referred to as respondents) relied on the report of appraiser David Bizik, who valued the property at $3,100,000 for 2002 and $2,750,000 for 2003. Following a bench trial, Supreme Court essentially adopted petitioner's appraisal report and, with some adjustments thereto, assessed the property at $2,063,533 for 2002 and $1,518,861 for 2003 and ordered respondents to issue refunds for overpayment pursuant to RPTL 726 (1) (b). On respondents' appeal, we affirm.

"Our analysis begins with the recognition that a property valuation by the tax assessor is presumptively valid . . . [h]owever, when a petitioner challenging the assessment comes forward with 'substantial evidence' to the contrary, the presumption disappears" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187 [1998], quoting *People ex rel. Wallington Apts. v Miller*, 288 NY 31, 33 [1942]). At that point, "a court must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, supra* at 188; *see Matter of City of Troy v Town of Pittstown*, 306 AD2d 718, 720 [2003], *lv denied* 1 NY3d 505 [2003]). Should the trial court find an overvaluation, this Court must then review that finding "to determine whether it is supported by or against the weight of the evidence" (*Matter of Gibson v Gleason*, 20 AD3d 623, 626 [2005], *lv denied* 5 NY3d 713 [2005]).

Initially, we reject respondents' contention that petitioner failed to proffer sufficient evidence to rebut the presumption

that the assessments were valid. " 'In the context of tax assessment cases, the "substantial evidence" standard merely requires that petitioner demonstrate the existence of a valid and credible dispute regarding valuation' " (*Matter of City of Troy v Town of Pittstown, supra* at 720, quoting *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, supra* at 188), which will most often be accomplished by submission of " 'a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser' " (*Matter of Gibson v Gleason, supra* at 625, quoting *Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]; *see Matter of Friar Tuck Inn of Catskills v Town of Catskill*, 2 AD3d 1089, 1090 [2003]; *Matter of Gordon v Town of Esopus*, 296 AD2d 812, 813 [2002]). Here, petitioner met its initial burden by submitting the report of Harland, a certified real estate general appraiser, who utilized accepted methodologies—including sales comparison and income capitalization approaches—and adequately set forth his calculations and necessary details regarding the properties used in the comparison approaches (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, supra* at 189-190; *Matter of Friar Tuck Inn of Catskills v Town of Catskill, supra* at 1090; *Matter of New Cobleskill Assoc. v Assessors of Town of Cobleskill*, 280 AD2d 745, 746-747 [2001], *lv denied* 96 NY2d 715 [2001]; 22 NYCRR 202.59 [g] [2]; *cf. Matter of Board of Mgrs. of Harbor Condominiums v Board of Assessors of Vil. of Lake Placid*, 238 AD2d 825, 827 [1997], *lv denied* 91 NY2d 802 [1997]). Indeed, respondents' primary objection to Harland's report—that he improperly excluded data comparisons of other national chain pharmacies—goes to the weight to be given the evidence, i.e., the "ultimate strength, credibility or persuasiveness" of the report, rather than the competency of the report to raise a valid dispute (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, supra* at 188).

Having concluded that petitioner met its initial burden of rebutting the presumption of validity, we turn to respondents' contention that Supreme Court's finding—that petitioner proved that the assessments were excessive by a preponderance of the evidence—is against the weight of the credible evidence. While both appraisers used the sales comparison and income capitalization approaches to determine the property's market value, they had much different views on the types of properties which should be used in applying these methodologies. "By its very definition, a comparable sale need not be identical to the subject property . . . [but] need only be 'sufficiently similar to serve as a guide to the market value of the [subject] complex, notwithstanding differences between these comparables and the

[subject] property' " (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, supra* at 189, quoting *Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 732 [1986]; *see Matter of City of Troy v Town of Pittstown, supra* at 721-722). The income capitalization approach calls for an estimation of a property's income potential; here, both appraisers looked at comparable leases to determine the property's market rent and then, using a capitalization rate, calculated the present value of that amount (*see Matter of New Cobleskill Assoc. v Assessors of Town of Cobleskill, supra* at 746).

For his sales comparison, respondents' appraiser relied upon the sales of three newly-constructed national retail pharmacies in the Capital District between 1998 and 2001. Likewise, his income approach utilized lease information from four national retail pharmacies located in Albany and Rensselaer counties. In contrast, petitioner's appraiser considered sales of four non-national retail pharmacy properties, including a retail pet supply store in Colonie, a Boston Market in Colonie, a strip mall in the City of Saratoga Springs, Saratoga County, and an Italian food store in the City of Albany. In developing his income capitalization valuation, Harland utilized lease and rental data from five properties in close proximity to petitioner's pharmacy, including a national thrift store which used to house a Rite Aid pharmacy, a retail woodworking store, a real estate brokerage, a video store and a national pet supply center. In his report and in his testimony at trial, Harland acknowledged the availability of data from sales and leases of national pharmacy chain stores, but expressly rejected the usefulness of this data because such "build-to-suit" properties typically have above-market leases which encompass land acquisition, demolition and construction costs that do not reflect the property's actual value. Citing a large differential between the rents of national retail pharmacies and other retail establishments as evidence of the phenomena of national retail drug store chains purchasing and building at premium prices, he argued that the properties he selected are more reflective of true market value in that, on the open market, an Eckerd pharmacy is essentially like any other retail store. Given that Harland provided a plausible reason for not relying on data from other national retail pharmacies in the area, we cannot say that Supreme Court's decision to credit Harland's report and testimony over Bizik's was against the weight of the evidence (*see Matter of Gibson v Gleason*, 20 AD3d 623, 627 [2005], *supra*; *Matter of City of Toy v Town of Pittstown*, 306 AD2d 718, 721 [2003], *supra*; *cf. Matter of Friar Tuck Inn of Catskills v Town of Catskill*, 2 AD3d 1089, 1090-1091 [2003], *supra*; *Matter of Golub Corporation/Price Chopper Operating Co.*

*v Assessor of Town of Queensbury*, 282 AD2d 962, 962-963 [2001]).

We further find that the adjustments made by Supreme Court to reflect differences between Harland's comparables and the subject property are sufficiently supported by the record. Nor did the court err in applying a vacancy and collection loss rate of 10%—a figure within the range of rates advocated by the parties—despite the fact that the property was fully rented at the time of the appraisal (*see Matter of John P. Burke Apts. v Swan*, 137 AD2d 321, 326 [1988]). We have considered but remain unpersuaded by respondents' additional contentions.

Mercure, J.P., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.