█ In the Matter of NYCO MINERALS, INC., Respondent, v TOWN OF LEWIS et al., Appellants, et al., Respondents. (And Two Other Related Proceedings.) [840 NYS2d 460]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Lewis, J.H.O.), entered March 6, 2006 in Essex County, which granted petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce tax assessments on certain real property owned by petitioner.

In an earlier appeal by petitioner pertaining to three tax years in the 1990s, we upheld Supreme Court's dismissal of petitioner's challenges to its assessed value finding that, under the unique circumstances and given the nature of the property, the court appropriately looked to the income approach as reflected by royalty capitalization and found petitioner's proof of valuation insufficient (*Matter of NYCO Mins. v Town of Lewis*, 296 AD2d 748, 750 [2002], *lv dismissed and denied* 99 NY2d 576 [2003]). Petitioner commenced the current challenges to the assessed values (which exceeded $5 million each year for 2000, 2001 and 2002) and gathered extensive proof regarding value under the royalty income methodology and presented considerable evidence addressing deficiencies noted in the prior proceeding. Following four days of trial and the submission of various

evidence (including detailed appraisals), Supreme Court rendered a written decision in which it, among other things, discussed the conflicting evidence, made credibility determinations, specifically addressed prior deficiencies in light of the proof produced at this trial, and concluded that petitioner had satisfied its burden of proving by a preponderance of the evidence that the assessments were excessive. The court granted the petition, reducing the assessments for 2000, 2001 and 2002 to $1,425,000, $1,350,000 and $1,300,000, respectively. Respondents Town Assessor and Board of Assessment Review for the Town of Lewis (hereinafter collectively referred to as respondents) appeal.

Respondents argue that the prior proceeding precluded the result reached by Supreme Court under stare decisis and collateral estoppel. Initially, we note that the decision regarding value in earlier years, which involved primarily factual determinations, does not fall within the "doctrine of stare decisis, 'which recognizes that legal questions, once resolved, should not be reexamined every time they are presented' " (*Matter of Liberty Healthcare Mgt. Group v Fahey*, 257 AD2d 964, 965 [1999], quoting *Dufel v Green*, 198 AD2d 640, 640 [1993], *affd* 84 NY2d 795 [1995]).

Turning to collateral estoppel, a cornerstone of that doctrine is the notion of "fairness" (*Matter of Halyalkar v Board of Regents of State of N.Y.*, 72 NY2d 261, 268 [1988]), and it has been characterized as "an elastic doctrine" that should not be "mechanically applied" (*Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147, 153 [1988]). The doctrine is applied circumspectly to tax assessment cases because, although a prior year's valuation is of some relevance (*see Vantage Petroleum, Bay Isle Oil Co. v Board of Assessment Review of Town of Babylon*, 61 NY2d 695, 698 [1984]), "[i]t is of the essence of an assessment that it fixes value as of a certain time" and, accordingly, "[e]ach annual proceeding is separate and distinct from every other" (*People ex rel. Hilton v Fahrenkopf*, 279 NY 49, 52-53 [1938]; *Matter of Phelps Dodge Indus. v Kondzielaski*, 131 AD2d 675, 676-677 [1987], *lv denied* 70 NY2d 613 [1987]).

Here, petitioner's earlier challenge to assessed values for three years during the 1990s focused considerably (and in one year apparently exclusively) on market value under comparable sales analysis. That method, which is generally preferred, was nevertheless found not to best reflect value as to petitioner's property and the proof that petitioner submitted regarding the income approach was insufficient. In the current proceedings, the parties each appraised the premises using the discounted

cash flow method. Petitioner submitted considerable evidence as to value under that method, including proof addressing its deficiencies in the prior proceeding. We are unpersuaded that Supreme Court should have invoked the doctrine of collateral estoppel to foreclose petitioner from a full opportunity to fairly present its proof on the complex valuation issues implicated in this proceeding.

Respondents further argue that petitioner's proof regarding value of the property was inadequate. The local tax assessment is presumptively valid and, to overcome that presumption, a petitioner must present substantial evidence that the property is overvalued (*see Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]). Petitioner met this threshold burden with the detailed appraisal by its expert, a certified real estate appraiser with considerable experience who valued the subject property well below the assessed value; and he adequately explained, detailed and supported the reasons for his valuation (*see generally Matter of Eckerd Corp. v Semon*, 35 AD3d 931, 933 [2006]).

Where, as here, the initial presumption is rebutted, the next issue is "whether Supreme Court's finding that petitioner established overvaluation by a preponderance of the evidence is against the weight of the evidence" (*Matter of City of Troy v Town of Pittstown*, 306 AD2d 718, 721 [2003], *lv denied* 1 NY3d 505 [2003]). Both parties' experts valued the property by using discounted cash flow methodology based on royalty income, and each agreed that the relevant elements of this analysis included: (1) identifying the amount of ore reserves as of the valuation date; (2) projecting annual sales of finished products in tons and the amounts of ore that would be mined to produce the required tonnage of finished product for each year during the holding period; (3) projecting the sales prices in dollars per ton and from that the total gross sales per year; (4) applying an appropriate royalty rate to the sales numbers to project annual royalty income; (5) applying an appropriate discount rate to the future annual royalty income to derive a present value of that income; (6) determining the value of the property at the end of the holding period and discounting the proceeds of the resale to present value; and (7) calculating the property value by adding up the present value of each annual royalty payment and the resale proceeds.

Conflicting expert proof was presented on several of these elements. For example, one significant disagreement that accounted for a considerable part of the difference in the parties' valuations was their varying estimates as to the amount of wol-

lastonite ore reserves on the property. Relying on their respective geologists, petitioner placed reserves in 2000 a little below 2.4 million tons whereas respondents' estimated the reserves at nearly 3.5 million tons. Respondents' belief that there was an additional 1.1 million tons on the premises, together with a lower projected depletion rate calculated by respondents resulted in respondents estimating that 2.2 million tons in reserves would be available at the end of the holding period as compared with petitioner's projection of zero reserves. These differences between the estimated reserves by respondents and petitioner resulted in greatly varying values at the end of the holding period in 2012, with respondents putting value in excess of $5.5 million (based primarily on the value of the remaining wollastonite) and petitioner at $120,000 (based on a rate of $600 per acre for this rural area in the Adirondack Park).

Petitioner came forward with evidence indicating that the differences regarding reserves resulted from respondents considering gross reserves without regard to the economic feasibility to extract the ore and respondents double counting some reserves from both the existing permitted area and the proposed permitted area. Regarding economic feasibility, petitioner's geologist and its mine superintendent explained that wollastonite is found in bands of varying thickness separated by layers of other minerals (interburden) and covered by caprock and soil (overburden) and that, since wollastonite does not separate neatly from the layers of interburden and overburden, the top and bottom three feet are routinely removed from each band extracted. This considerably reduces actual usable reserves, both by reducing bands and making narrow bands virtually of no use. There was also evidence that respondents' expert failed to account for property boundary set-back requirements, which resulted in ore that petitioner is precluded from mining being included in respondents' calculation.

To be sure, conflicting evidence was presented on these as well as the other contested issues. Supreme Court resolved those credibility issues in favor of petitioner. We generally defer to the trial court's credibility determinations (see *Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors,* 9 AD3d 540, 542 [2004]; *Matter of City of Troy v Town of Pittstown, supra* at 721; *Matter of Golub Corporation/Price Chopper Operating Co. v Assessor of Town of Queensbury,* 282 AD2d 962, 962-963 [2001]). Since there is sufficient proof in the record supporting petitioner's experts, we are unpersuaded to set aside Supreme Court's decision to credit those experts and its determination is not against the weight of the evidence (see *Matter of Eckerd Corp. v Semon, supra* at 934).

The remaining arguments have been considered and found unavailing.

Cardona, P.J., Crew III, Peters and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.