■ In the Matter of RITE AID OF NEW YORK No. 4928, Appellant, v ASSESSOR OF THE TOWN OF COLONIE et al., Respondents. (And Two Other Related Proceedings.) [870 NYS2d 642]—

Malone Jr., J. Appeal from a judgment of the Supreme Court (O'Connor, J.), entered November 5, 2007 in Albany County, which dismissed petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce the 2004, 2005 and 2006 tax assessments on certain real property leased by petitioner.

Petitioner is the lessee under a 20-year triple net lease of real property located at 1868 Central Avenue in the Town of Colonie, Albany County, which is improved by an 11,180-square-foot single-tenant retail pharmacy. The pharmacy was constructed in 1998 and 1999 under a build-to-suit arrangement with petitioner. Under the terms of the lease, petitioner is responsible for, among other things, the payment of real property taxes. In 2004, 2005 and 2006, the property was assigned an assessed value of $2,500,000 by respondent Assessor of the Town of

Colonie. Petitioner commenced three proceedings pursuant to RPTL article 7 challenging these assessments. Following respondents' service of an answer, a nonjury trial was conducted at which the parties presented expert testimony. The trial was later reopened for the purpose of receiving evidence of the recent sale of a similar property that both experts had used as a comparable in valuing petitioner's property. Thereafter, Supreme Court credited respondents' proof over petitioner's and dismissed the petitions. Petitioner now appeals.

Initially, we note that, in tax certiorari proceedings, tax assessments enjoy a presumption of validity (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187 [1998]). To rebut this presumption, it is incumbent upon the petitioner to come forward with substantial evidence to the contrary (*see id.* at 187). Once the presumption has been rebutted, it is the trial court's function to "weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether [the] petitioner has established by a preponderance of the evidence that its property has been overvalued" (*id.* at 188; *see Matter of Eckerd Corp. v Semon*, 35 AD3d 931, 932 [2006]; *Matter of Lia v Town of Niskayuna*, 300 AD2d 876, 877 [2002]). The appellate court's role is to review the trial court's finding " 'to determine whether it is supported by or against the weight of the evidence' " (*Matter of Eckerd Corp. v Semon*, 35 AD3d at 932, quoting *Matter of Gibson v Gleason*, 20 AD3d 623, 626 [2005], *lv denied* 5 NY3d 713 [2005]), giving due deference to the trial court's " 'power to resolve credibility issues by choosing among conflicting expert opinions' " (*Matter of Brooks Drugs, Inc. v Board of Assessors of City of Schenectady*, 51 AD3d 1094, 1095 [2008], *lv denied* 11 NY3d 710 [2008], quoting *Matter of Eckerd Corp. v Semon*, 44 AD3d 1232, 1233 [2007]).

In the case at hand, respondents do not dispute that petitioner came forth with substantial evidence, in the form of the appraisal report and testimony of its expert, to rebut the presumption of validity of the tax assessments. Nevertheless, Supreme Court found that petitioner did not establish, by a preponderance of the evidence, that its property was overvalued. We must now determine if Supreme Court's finding is supported by the weight of the evidence.

In support of its case, petitioner presented the testimony of appraiser Christopher Harland, who concentrated his analysis on the fee simple value of the property, unencumbered by any leases. He employed the comparable sales approach, income capitalization approach and cost approach in arriving at his

valuation. He valued the subject property at \$1,730,000 for 2004 and 2005, and at \$1,740,000 for 2006. The comparable properties he used in his analyses consisted primarily of commercial retail properties located in the same general geographic area. None, however, were currently occupied by national pharmacy chains nor subject to build-to-suit leases. Two of the comparable properties he used in one of his analyses had originally been constructed under build-to-suit arrangements with national pharmacy chains. One had since been leased to Goodwill at a considerably reduced rental amount and the second was vacant. Harland opined that build-to-suit properties were not accurate indicators of market value because the lease terms could cause an overvaluation or an undervaluation of the property. Consequently, he endeavored to exclude them from his analyses.

On the other hand, respondents' appraiser, David Bizik, affirmatively sought to include in his analyses properties subject to build-to-suit leases with national pharmacy chains because, in his view, it was best to use properties that shared similar characteristics with the subject property in order to determine its true market value. In his sales comparison analysis, he utilized sales of three properties leased by national pharmacy chains upon which retail drug stores had been constructed under build-to-suit arrangements. In his income capitalization analysis, he utilized eight commercial properties, six of which were leased to national drug store chains under triple net leases where construction was completed pursuant to build-to-suit arrangements, one of which was originally constructed under a build-to-suit arrangement with a national pharmacy chain and leased to that pharmacy, but later subleased to Goodwill at a reduced rate,* and one of which was leased to a commercial nondrug store tenant under a triple net lease. Like Harland, Bizik appraised the subject property's fee simple value, but was of the view that the leased fee value was also a relevant consideration resulting in the same valuation when the rental in place was the same as the rent that could be obtained on the market. According to his analyses, he valued the subject property at \$3,600,000 in 2004 and 2005, and \$3,900,000 in 2006.

In addition to Bizik, respondents presented the testimony of Jeffrey Rothbart, an expert in valuing commercial real properties encumbered by net leases. Rothbart gave extensive testimony concerning the unique characteristics of the net lease

---

* This property was also used by Harland in his analysis. Notably, when this property was sold in April 2007, the trial was reopened for the sole purpose of presenting evidence concerning its sale price, which was \$3,225,000.

drug store market as a subsector of the larger commercial real estate market, noting that factors such as location of the property, creditworthiness of the drug store chain and term of the net lease differentiated drug store assets from other commercial real estate assets. He opined that, due to these characteristics, drug store assets traded at a premium and were considered the crown jewel of the single-tenant net lease retail market. Rothbart's testimony provided the basis for the comparables utilized by Bizik in his appraisal of the subject property.

Notwithstanding the differing comparables used by Harland and Bizik in their respective analyses, Harland articulated a plausible reason for his failure to use the type of comparables adopted by Bizik, which goes to the weight of the evidence, not to its competency (*see Matter of Eckerd Corp. v Semon*, 35 AD3d at 933; *see also Matter of Eckerd Corp. v Gilchrist*, 44 AD3d 1239, 1240 [2007], lv denied 10 NY3d 707 [2008]). Both experts put forth a persuasive case for their respective valuations. Nevertheless, Supreme Court chose to credit the testimony of respondents' expert over that of petitioner's expert in finding that an overvaluation of the subject property had not been established by a preponderance of the evidence. This is a credibility determination that we decline to disturb.

In addition to such testimony, Supreme Court was also persuaded by evidence of the recent sale of a single-tenant retail pharmacy building, originally constructed for petitioner's own pharmacy chain under a build-to-suit arrangement and later leased to Goodwill, for the price of $3,225,000. This evidence of a recent arm's length sale of such a similar property is perhaps the best indicator of true market value (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 189; *Matter of Eckerd Corp. v Gilchrist*, 44 AD3d at 1240). Contrary to petitioner's claim, the fact that the subject property was not the actual property that was recently sold does not undermine the validity of this evidence. In addition, we reject petitioner's claims that Supreme Court erroneously relied upon leased fee sales in finding that the property was not overvalued or that it improperly considered evidence of the net lease drug store submarket as a method of valuation. We have considered petitioner's remaining contentions and find them to be unavailing. Accordingly, inasmuch as Supreme Court's finding is supported by the weight of the evidence on the record before us, we find no reason to disturb its decision.

Mercure, J.P., Peters, Lahtinen and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.