Scudder, P.J.
(dissenting). I respectfully dissent. In my view, the valuation determination made by Supreme Court should be upheld, and I would therefore affirm the order and judgment. While it is well established that “a property valuation by the tax assessor is presumptively valid” (Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 187 [1998]), I agree with the majority that petitioner came forward with substantial evidence to rebut the presumption by submitting “a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser” (Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes, 92 NY2d 192, 196 [1998]; see Matter of Rite Aid Corp. v Otis, 102 AD3d 124, 125-126 [2012], lv denied 21 NY3d 855 [2013]). Once that presumption of validity is rebutted, “a court must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued” (FMC Corp., 92 NY2d at 188; see Rite Aid Corp., 102 AD3d at 126).
In tax certiorari proceedings, such as the one at issue on this appeal, the Court of Appeals has specifically held that the Appellate Division “ ‘may not set aside a finding of value made at Special Term, unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or unless it appears that the court at Special Term has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate’ ” (People ex rel. MacCracken v Miller, 291 NY 55, 61 [1943]; see Matter of Adirondack Mtn. Reserve v *1516 Board of Assessors of the Town of N. Hudson, 106 AD3d 1232, 1237 [2013]; Matter of Universal Packaging v Assessor of City of Saratoga Springs, 259 AD2d 875, 875 [1999]; cf. Matter of Kohl’s Ill. Inc. #691 v Board of Assessors of the Town of Clifton Park, 123 AD3d 1315, 1317 [2014]; Matter of Al Turi Landfill, Inc. v Town of Goshen, 93 AD3d 786, 791 [2012], lv denied 19 NY3d 815 [2012]).
The crux of this appeal as well as the appeals in Matter of Rite Aid Corp. v Huseby (130 AD3d 1518 [2015]) and Matter of Rite Aid Corp. v Huseby (130 AD3d 1518 [2015]) are the method and manner of valuing first-generation, build-to-suit retail drugstores for tax assessment purposes. Petitioner’s expert, Christopher Harland, concluded that the value of the leased fee interest, i.e., the value of the property with the lease, is different from the value of the fee simple interest, i.e., the value of the property itself without any attendant lease. He opted to use the value of the fee simple interest only and thus used retail properties not subject to long-term retail drugstore leases as comparables. The majority concludes that Harland’s opinions and valuations are invalid because he used commercial retail properties instead of first-generation build-to-suit pharmacies in his sales comparison and income capitalization analyses. Harland, however, explained his reasons for doing so. As was stated succinctly by the Third Department in a similar appeal in which Harland’s valuation method was credited, “[t]he exclusion of national retail drug stores from Harland’s analysis was premised upon his designation of those properties as ‘build-to-suit,’ meaning that they often have above-market leases attributable to premiums being paid to acquire the land, as well as assembly, demolition and construction costs” (Matter of Eckerd Corp. v Burin, 83 AD3d 1239, 1242 [2011]; see Matter of Eckerd Corp. v Semon, 35 AD3d 931, 934 [2006]). Moreover, the testimony at the nonjury trial established that the price of the land before the retail drugstore was built was $1.59 million, and a similar retail drugstore, the lease of which had expired, had recently sold for only $1.4 million.
Respondents’ expert, Ronald Rubino, gave considerable weight to the 2003 sale of the property for $4.65 million. At that time, however, the property was subject to a 20-year retail drugstore lease in the amount of $377,000 per year. In his sales comparison and income capitalization analyses, Rubino relied almost exclusively on first-generation, build-to-suit retail drugstores still subject to lease provisions.
Each expert used the sales comparison and income capitaliza *1517 tion methods of valuation, but the fundamental difference in whether to consider the lease in their respective analyses explains their different valuations. Both approaches to valuation have been upheld by the Third Department and, where trial courts have accepted Harland’s valuations, the Third Department has generally affirmed (see e.g. Eckerd Corp., 83 AD3d at 1242-1243; Matter of Eckerd Corp. v Semon, 44 AD3d 1232, 1234 [2007]; Eckerd Corp., 35 AD3d at 934). Where trial courts have rejected Harland’s valuations, the Third Department has also generally affirmed (see Matter of Rite Aid of N.Y. No. 4928 v Assessor of Town of Colonie, 58 AD3d 963, 966 [2009], lv denied 12 NY3d 709 [2009]; Matter of Brooks Drugs, Inc. v Board of Assessors of City of Schenectady, 51 AD3d 1094, 1095-1096 [2008], lv denied 11 NY3d 710 [2008]; Matter of Eckerd Corp. v Gilchrist, 44 AD3d 1239, 1240 [2007], lv denied 10 NY3d 707 [2008]). Notably, however, even when a trial court had rejected Harland’s valuation, the Third Department wrote that Harland had “articulated a plausible reason for his failure to use the type of comparables adopted by” the respondent’s expert and that he had “put forth a persuasive case for [his] . . . valuation! ]” (Rite Aid of N.Y. No. 4928, 58 AD3d at 966).
The Third Department has concluded that the decision whether to credit Harland’s testimony on the valuation of retail drugstore properties is “a credibility determination that [the Court] decline[s] to disturb” (id.; see Eckerd Corp., 83 AD3d at 1243; Eckerd Corp., 44 AD3d at 1241). The one exception is Rite Aid Corp. (102 AD3d 124 [2012]). In that case, the trial court concluded that, because the recent sale price of the subject property was consistent with the value of the property as determined by respondents’ expert, the trial court’s “decision to credit the appraisal offered by petitioner was against the weight of the evidence” (id. at 127). While that case involved circumstances similar to the circumstances at issue in the instant appeal, I would decline to follow that decision. There, as here, Harland explained his reasoning for rejecting recent sales, i.e., that such sales do not reflect the value of the fee simple interest but, rather, inflated above-market leases. I thus conclude that, if one were to credit Harland’s reasoning, a recent sale of the subject property while the lease was still in effect would not affect the valuation of the fee simple interest in the property.
Here, the court agreed with Harland’s valuation, concluding that the lease was nothing more than a contract, i.e., “an intangible property right,” not subject to taxation under RPTL 300. “Given that Harland provided a plausible reason for not *1518 relying on [the 2003 sale or] data from other national retail pharmacies in the area, [I] cannot say that [the court’s] decision to credit Harland’s report and testimony over [Rubino’s] was against the weight of the evidence” (Eckerd Corp., 35 AD3d at 934). I would thus decline to disturb “[t]he court’s ultimate finding concerning the value of the property [because it] is within the range of the expert testimony and supported by substantial evidence, and the court adequately explained the basis for its ultimate finding” (Matter of Markham v Comstock, 38 AD3d 1262, 1263 [2007]; see Universal Packaging, 259 AD2d at 875; cf. Rite Aid Corp., 102 AD3d at 126-127). Present— Scudder, P.J., Smith, Garni, Sconiers and Whalen, JJ.