■ In the Matter of GEORGE A. DONALDSON & SONS, INC., Respondent, v ASSESSOR OF THE TOWN OF SANTA CLARA et al., Appellants. (And Three Other Related Proceedings.) [23 NYS3d 459]—

Clark, J. Appeal from an order of the Supreme Court (Meyer, J.), entered December 30, 2014 in Franklin County, which granted petitioner's applications, in four proceedings pursuant to RPTL article 7, to reduce the 2007, 2008, 2009 and 2010 tax assessments on certain real property owned by petitioner.

In these four proceedings, petitioner challenges the 2007, 2008, 2009 and 2010 tax assessments of real property it owned that is located in the Town of Santa Clara, Franklin County. The property—which is partially developed and includes the Donaldson's Campground resort—consists of approximately 700 acres situated along the lake shores of Upper Saranac Lake, Fish Creek Pond and Fish Creek Outlet. The record here reflects that the approximately 300-acre developed portion of the property, which is operated as a seasonal resort, parallels

---

the lakeshore along the northern and eastern boundaries of the property. The resort area is serviced by either a dirt road or a secondary road—used when the main road is impassable—that is inland and essentially runs parallel to the main road but does not extend as far into the property. This developed portion of the property contains approximately 100 sites, located near a lakefront beach and a stone boathouse, for tent camping or a recreational vehicle; a number of small cabins or trailers in varying conditions (mostly on 50-foot-wide lots, which are rented via long-term ground leases) along approximately 13,000 to 14,000 feet of lakeshore; and three historic wooden houses on the lakefront, of which two are rented and one is vacant due to its poor structural condition. It also contains a leased, seasonal retail grocery and convenience store, a small office, a property manager's two-bedroom apartment and garage, as well as maintenance buildings. The remaining portion of the property consists of approximately 400 acres that is undeveloped excess or back land (hereinafter the back land), which is vacant and wooded, has limited access, wetlands, steep slopes and drops along with a landfill that has been closed for more than 30 years.

The developed portion of the property encompassing the general store and maintenance building is zoned commercial under respondent Town of Santa Clara's land use code, while the developed resort area is zoned as outdoor recreation use. In contrast, the back land is located in the R-1-3.2 residential zone under the Town's land use code, which allows preexisting commercial uses and allows a single-family residence on minimum lots of 3.2 acres. With regard to the 2007, 2008, 2009 and 2010 tax assessments, the property was valued at $6,215,000 and assessed at $5,408,100.

Petitioner commenced these RPTL article 7 proceedings to challenge and reduce the assessed values of the real property on the 2007, 2008, 2009 and 2010 final assessment rolls. At the ensuing nonjury trial, petitioner presented the testimony and report of Wayne Feinberg, its appraiser, who valued the property at $1,370,673 for 2007, $1,371,369 for 2008, $1,368,538 for 2009 and $1,365,153 for 2010. In contrast, respondents' appraiser, Charles Francis, valued the property at $6,215,000 for all four years.[1] Without wholesale adopting Feinberg's report, Supreme Court found that petitioner's

1. In his report, Francis totaled the values of the different parts of the property at $5,215,000; however, he conceded on cross-examination that his arithmetic was incorrect, and the values, when added correctly, equal $6,215,000.

property had been overvalued by respondents for the years in question and granted petitioner's application for reduction of the assessments.[2] Respondents now appeal, principally contending that petitioner failed to rebut the presumption that the tax assessments were accurate and, therefore, that the petitions should have been dismissed. We disagree.

"A tax assessment is presumptively valid, but it may be rebutted by substantial evidence to the contrary which, in the context of tax assessment cases, requires [the] petitioner to demonstrate the existence of a valid and credible dispute regarding valuation" (*Matter of Gibson v Gleason*, 20 AD3d 623, 625 [2005], *lv denied* 5 NY3d 713 [2005] [citations omitted]; *see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187 [1998]; *Matter of Eckerd Corp. v Semon*, 35 AD3d 931, 932 [2006]). Substantial evidence is a minimal threshold demonstrating "a valid and credible dispute regarding valuation" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188; *see Matter of Adirondack Mtn. Reserve v Board of Assessors of the Town of N. Hudson*, 106 AD3d 1232, 1234 [2013]) and "will most often consist of a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]; *see* 22 NYCRR 202.59 [g] [2]). Although the substantial evidence standard is not a heavy one, "the documentary and testimonial evidence proffered by [the] petitioner [must be] based on sound theory and objective data" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188 [internal quotation marks omitted]). Upon satisfaction of this burden, "the presumption disappears and the court 'must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether [the] petitioner has established by a preponderance of the evidence that its property has been overvalued' " (*Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst*, 23 NY3d 168, 175 [2014], quoting *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188).

At trial, Feinberg explained that to value the developed 300 acres, he used an income-based approach to arrive at a valuation and a market or comparable-sales approach to value the 400 acres of back land. Feinberg noted that in developing the capitalization rate, which consists of debt/mortgage and equity components, he obtained a 7% interest rate for the debt or

---

**2.** Supreme Court valued the property at $3,650,000 for 2007, $3,650,000 for 2008, $1,631,658 for 2009 and $1,626,561 for 2010.

mortgage component by speaking with local banks. With regard to the equity rate, Feinberg stated that 15% would be appropriate given what an investor would require for this type of property that lacked, for example, commercial office space.[3] Notably, Feinberg explained that because this property is "extremely unique," he did not look to national equity rate statistics. Feinberg also noted that, based on his experience with other properties in the area, there is a typical range of return on real estate investments of 8% to 15%. Based on the mortgage or debt rate and the equity rate, Feinberg arrived at a capitalization rate of 10.69%.

As to the 400 acres of undeveloped back land—which is zoned for single-family residential and preexisting commercial (of which there is none) use—Feinberg explained that he utilized a market or comparable sales approach to value the land. To do this, Feinberg included in his report other waterfront properties, which were 50 acres or more, and the asking price per acre for those properties. Feinberg explained that because the back land has wetlands, steep slopes and an old landfill and would need to be accessed through existing roads, appropriate value per acre for the back land would be at the low end of the price range of comparable properties sold in the region. Thus, Feinberg concluded that the 400 acres of back land should be valued at $700 per acre.[4] As to a 150 to 200-foot portion of waterfront land located within the residentially-zoned back land, Feinberg took a similar approach, and, adjusting for location, lake front footage, relative size and privacy, Feinberg adjusted upward from the compared property, which was sold at $1,323 per foot, to arrive at a valuation of $2,000 per foot for this small portion of back land on the waterfront.

In view of the foregoing, we agree with Supreme Court that petitioner produced substantial evidence to rebut the presumption that respondents' tax assessments were accurate. Feinberg detailed the specific sources of rental income that he used to value the developed income-producing portion of the land—a valuation method that has been recognized to be the best indicator of value with respect to income-producing property (*see* 22 NYCRR 202.59 [g] [2]; *Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau*, 45 NY2d 538, 542 [1978]; *Matter of Village Sq. of Penna, Inc. v Board of Assess-*

---

**3.** Respondents' appraiser, Francis, considered overall capitalization rates ranging from 3.5% to 12%, but more typically 5.0% to 8.5%, and determined that 7.5% was the appropriate rate.

**4.** Francis acknowledged that this valuation fell within his estimated range of $600 to $900 per acre for the back land.

*ment Review of the Town of Colonie*, 123 AD3d 1402, 1404 [2014], *lv denied* 25 NY3d 903 [2015]). Further, Feinberg's capitalization rate, although based in part upon his personal experience and knowledge, was appropriately based upon specific income and expense numbers, as well as specified debt/mortgage and equity rates and the corresponding local sources of those rates (*see* 22 NYCRR 202.59 [g] [2]; *compare Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors*, 124 AD3d 1042, 1044-1045 [2015], *and Matter of New Cobleskill Assoc. v Assessors of Town of Cobleskill*, 280 AD2d 745, 747 [2001], *lv denied* 96 NY2d 715 [2001], *with Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst*, 23 NY3d at 176-178). Thus, we find no basis upon which to disturb Supreme Court's determination that Feinberg's report was sufficient to rebut the presumption that respondents' tax assessments were valid (*see Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors*, 124 AD3d at 1045; *Matter of New Cobleskill Assoc. v Assessors of Town of Cobleskill*, 280 AD2d at 747).

Having concluded that petitioner met its initial burden of rebutting the presumption of validity, we turn to respondents' additional contention that Supreme Court's valuations are against the weight of the credible evidence. "Once a petitioner in an RPTL article 7 proceeding has rebutted the presumption of the assessment's validity, 'a court must weigh the entire record . . . to determine whether the petitioner has established by a preponderance of the evidence that its property has been overvalued' " (*Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors*, 124 AD3d at 1046, quoting *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188 [internal brackets omitted]). Inasmuch as property valuation—including setting the appropriate capitalization rate—is largely a question of fact, this Court gives deference to Supreme Court's credibility determinations and "will affirm that court's decision unless it is[, among other things,] based upon an erroneous theory of law or . . . it appears that the court has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate" (*Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors*, 124 AD3d at 1046 [internal quotation marks, ellipsis, brackets and citations omitted]; *see Matter of Highbridge Dev. BR, LLC v Assessor of the Town of Niskayuna*, 121 AD3d 1324, 1327 [2014]; *Matter of Northern Pines MHP, LLC v Board of Assessment Review of the Town of Milton*, 72 AD3d 1314, 1315-1316 [2010]).

Here, respondents have failed to identify any erroneous

theory of law upon which Supreme Court relied or specifically articulate how the court arrived at a value that is excessive or inadequate. In its decision, Supreme Court noted that Feinberg and Francis both used the capitalization of income approach to value the developed portion of the property; however, Francis used the comparable sales approach to value the three historic cottages. Likewise, with regard to the back land, both experts used a comparable sales approach.

With regard to the developed portion of the property, Supreme Court found that Francis' appraisal was flawed insofar as it failed to account for "bad debt" and deduct that debt as an expense from the three historic cottages for years 2006 and 2009. Supreme Court also imputed $3,000 in annual income for the on-site apartment used by the owners and found that Francis arbitrarily reduced the actual salary expenses to an amount commensurate with what he had considered to be a reasonable management fee. Supreme Court also found that Francis should not have valued the three historic cottages, under the comparable sales approach, as if those cottages could be subdivided from the property in the future and sold to third parties for private residential use. Two of the three cottages generated rental income, and these amounts ($2,011 and $4,232), less repairs and maintenance costs, were reasonably relied upon by the court in valuing the income-producing cottages under their current state of use (*see Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau*, 45 NY2d at 542; *Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie*, 123 AD3d at 1404), especially where, as here, the outdoor recreation zoning restrictions would not have permitted private residential subdivision of the cottages.[5]

In rejecting each appraiser's capitalization rates, a factual question for the court, Supreme Court found that Francis derived his capitalization rate of 8.77% from market participants that did not include comparable properties and utilized an internal rate of return, which the court found to be an unacceptable method for developing a capitalization rate. As to Feinberg, the court found that his selection of a 15% rate of return was unreasonably high because a rational investor would not have expected such a high rate of return during the economic slowdown and the years at issue, that an 8% equity rate of return was appropriate and that capitalization rates of

5. As to the third cottage, which was vacant, Supreme Court found that neither appraiser valued that cottage using a reasonable seasonal rental amount, which the court found to be $1,000 per month for six months.

10.2% (2008) and 10.3% (2007, 2009 and 2010) were appropriate.

Regarding the value of the residentially-zoned back land, Supreme Court found that Francis valued that portion of land without full appreciation of the topographical restrictions that would limit development of that land. Furthermore, Supreme Court found that Francis improperly valued the developed waterfront property located within the outdoor recreational use zone as if that waterfront land could be subdivided in the future for residential use. The court therefore adopted Feinberg's valuation of the back land and waterfront land because he properly took into consideration current uses and zoning restrictions.

In view of the foregoing findings and rationales, and respondents' failure on appeal to identify any specific error in Supreme Court's findings, we find that Supreme Court properly took into consideration petitioner's actual use of the property and applicable zoning restrictions limiting the developed waterfront property to then-existing income-producing tourist accommodation uses and not future, speculative residential uses (*see Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 360 [1992]; *Matter of Joy Bldrs., Inc. v Conklin*, 96 AD3d 939, 940 [2012]). Accordingly, we affirm.

McCarthy, J.P., Egan Jr., Rose and Lynch, JJ., concur. Ordered that the order is affirmed, without costs.

