In the Matter of AL TURI LANDFILL, INC., Respondent, v TOWN OF GOSHEN et al., Appellants. [941 NYS2d 177]—

In related tax certiorari proceedings pursuant to RPTL article 7 for the tax years 2000 through 2009, the Town of Goshen, the Assessor or Board of Assessors of the Town of Goshen, and the Board of Assessment Review of the Town of Goshen appeal, and the Goshen Central School District separately appeals (1), as limited by their briefs, from so much of an order of the Supreme Court, Orange County (Ritter, J.), dated May 24, 2010, as denied that branch of the motion of the Town of Goshen, the Assessor or Board of Assessors of the Town of Goshen, and the Board of Assessment Review of the Town of Goshen which was to dismiss the petitions relating to the tax years 2000, 2001, and 2002 pursuant to 22 NYCRR 202.59 and RPTL 718 (2) (d), (2) from a decision of the same court dated October 22, 2010, made after a nonjury trial, (3) from a judgment of the same court dated November 23, 2010, and (4) from an amended judgment of the same court dated December 20, 2010, which, upon the decision, inter alia, reduced the real estate tax assessments of all 20 of the petitioner's lots in issue by $22,460,600 for the 2000 tax year, $22,607,990 for the 2001 tax year, $22,855,790 for the 2002 tax year, $23,894,300 for the 2003 tax year, $24,405,400 for the 2004 tax year, $19,536,200 for the 2005 tax year, $14,550,800 for the 2006 tax year, $3,578,800 for the 2007 tax year, $3,447,000 for the 2008 tax year, and $3,312,300 for the 2009 tax year.

Ordered that the appeals from the order, the decision, and the judgment are dismissed, without costs or disbursements; and it is further,

Ordered that the amended judgment is reversed, on the law and the facts, without costs or disbursements, the matter is remitted to the Supreme Court, Orange County, for a recalculation of the real estate values for tax assessment purposes of the landfill lots designated as 17.1, 17.2, 20, 21.1, 21.22, 22, 23.1, and 23.3, and the related lots designated as 1.2, 7.2, and 19, in the tax years for which the tax assessments for those lots are challenged by the petitioner, based upon the appraisal submitted by the appellants Town of Goshen, the Assessor or Board of Assessors of the Town of Goshen, and the Board of Assessment Review of the Town of Goshen, and the decision, order, and judgment are vacated. The findings of fact as to the value of lots

designated as 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 18, 23.2, and 75 of the subject property are affirmed.

The appeal by the Goshen Central School District from the order must be dismissed on the ground that it is not aggrieved by the order (see CPLR 5511). The appeals by the Town of Goshen, the Assessor or Board of Assessors of the Town of Goshen, and the Board of Assessment Review of the Town of Goshen from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal by those appellants from the order are brought up for review on the appeal from the amended judgment (see CPLR 5501 [a] [1]). The appeals from the decision must be dismissed as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509, 511 [1984]). The appeals from the judgment must be dismissed on the ground that it was superseded by the amended judgment.

The petitioner, Al Turi Landfill, Inc. (hereinafter Al Turi), owned more than 200 acres of property in the Town of Goshen, divided into 20 separate lots. These lots were designated as lots 1.2, 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 7.2, 17.1, 17.2, 18, 19, 20, 21.1, 21.22, 22, 23.1, 23.2, 23.3, and 75. During the tax years in issue, Al Turi sold six of the lots, to wit, lots 1.42, 1.6, 1.7, 18, 23.2, and 75.

The parties' dispute over tax assessments commenced in the early 1990s. All proceedings relating to tax assessments for 1999 and earlier were settled by the parties. A landfill on the property was closed in October 2002, after Al Turi's application to the New York State Department of Environmental Conservation to expand the landfill was denied, and that determination was confirmed by this Court (see Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation, 289 AD2d 231 [2001], affd 98 NY2d 758 [2002]).

By notice of motion dated October 19, 2006, the appellants Town of Goshen, the Assessor or Board of Assessors of the Town of Goshen, and the Board of Assessment Review of the Town of Goshen (hereinafter collectively the Town) moved, inter alia, to dismiss the petitions relating to the tax years 2000, 2001, and 2002.

Insofar as relevant on this appeal, the Town asserted that Al Turi failed to serve and file a verified statement of income and expenses on the property, or a statement that the property was not income-producing, for the tax years 2000, 2001, and 2002, in violation of 22 NYCRR 202.59 (b) and (d) (1). The Town contended that such failure mandated the dismissal of those proceedings pursuant to RPTL 718 (2) (d).

In opposition, Al Turi noted that its President filed verified grievance forms annually with the Board of Assessment Review of the Town of Goshen, and annexed as exhibits thereto Al Turi's most recent available tax returns and financial statements referred to as "BAR [Board of Assessment Review] Information Submissions." Al Turi asserted that the BAR Information Submissions complied with 22 NYCRR 202.59 (b). Al Turi characterized lots 17.1, 17.2, 21.1, 21.22, 22, and 23.1 as landfill lots with income and expenses, and lots 1.2, 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 7.2, 18, 19, 20, 23.2, 23.3, and 75 as vacant lots with no income or expenses. With respect to the 2002 proceedings, Al Turi submitted affidavits pursuant to 22 NYCRR 202.59 (b), with respect to the six landfill lots, which were served upon the attorney for the Town, and filed with the Clerk of the Supreme Court within four years of the commencement of the proceedings relating to those lots.

In the order appealed from dated May 24, 2010, the Supreme Court denied that branch of the Town's motion which was to dismiss the petitions relating to the 2000, 2001, and 2002 tax years, on the ground that 14 of the lots had no income, and compliance with 22 NYCRR 202.59 (b) with respect to the six remaining lots should be waived pursuant to 22 NYCRR 202.1 (b) on the ground that there was no prejudice.

At a nonjury trial, the Town's appraiser claimed that eight of the lots, to wit, lots 17.1, 17.2, 20, 21.1, 21.22, 22, 23.1, and 23.3, were landfill lots. The Town's appraiser concluded that these lots constituted specialty property and valued the land using the comparable sales method of valuation, and valued the improvements using the reproduction cost less depreciation method of valuation. In support of its position, the Town cited improvements on these lots, including groundwater monitoring wells to monitor water level and water quality, horizontal collectors and vertical wells to collect methane gas, and a leachate treatment plant, described as state-of-the-art.

The Town's appraiser characterized lots 1.2, 7.2, and 19 as landfill-related lots, and they were valued based upon the comparable sales method of valuation. The remaining lots, to wit, lots 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 18, 23.2, and 75, were characterized as vacant, and were also valued based upon the comparable sales method.

Al Turi's appraiser claimed that 10 of the 20 lots, to wit, lots 1.2, 7.2, 17.1, 17.2, 19, 20, 21.1, 21.22, 22, and 23.1, were landfill lots, and that they should be valued based upon the capitalization of income from market rents and/or royalties which, here, consisted of tipping fees for storage of an additional 26,000 tons

of waste, and income from methane gas collection, a product of the landfill. Al-Turi characterized nine of the other lots, to wit, lots 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 18, 23.2, and 75, as vacant, and its appraiser valued those lots using the comparable sales method of valuation. Al-Turi alleged that lot 23.3 was underwater and, thus, had no value.

The Supreme Court concluded that the improvements cited by the Town did not add value and, therefore, the Town's appraiser's valuation of lots 17.1, 17.2, 20, 21.1, 21.22, 22, 23.1, and 23.3 as specialty property, by using reproduction cost less depreciation, was not "economically realistic." The Supreme Court adopted Al Turi's appraiser's valuations.

On appeal, the Town acknowledges that the Assessor overvalued Al Turi's property. The issues on appeal are whether the proceedings relating to the tax years 2000, 2001, and 2002, should have been dismissed, and the extent to which Al-Turi's property was overvalued by the Assessor.

Pursuant to RPTL 718 (2) (d), a note of issue in a tax certiorari proceeding must be filed "within four years from the date of the commencement of the proceeding . . . except where the parties otherwise stipulate or a court or judge otherwise orders on good cause shown within such four-year period." In the instant case, the notes of issue for the proceedings relating to the 2000, 2001, and 2002 tax years were served and filed within four years of the commencement of the proceedings relating to those tax years. The appellants contend that those notes of issue should have been stricken because Al Turi failed to comply with 22 NYCRR 202.59 (b), which provides, in pertinent part: "(b) *Statement of income and expenses.* Before the note of issue and certificate of readiness may be filed, the petitioner shall have served on the respondent, in triplicate, a statement that the property is not income-producing, or a copy of a verified or certified statement of the income and expenses on the property for each tax year under review . . . an owner-occupied business property shall be considered income-producing as determined by the amount reasonably allocable for rent, but the petitioner is not required to make an estimate of rental income." 22 NYCRR 202.59 (d) (1) provides: "A note of issue and certificate of readiness shall not be filed unless all disclosure proceedings have been completed and the statement of income and expenses has been served and filed."

Failure to serve and file a statement of income and expenses pursuant to 22 NYCRR 202.59 (b) is a ground for striking a note of issue and, if the note of issue is stricken more than four years after the proceeding was commenced, such is also a ground

to dismiss the proceeding pursuant to RPTL 718 (2) (d) (*see Matter of Eastgate Corporate Park, LLC v Assessor, Bd. of Assessment Review of Town of Goshen*, 54 AD3d 1036 [2008]; *Matter of Rose Mount Vernon Corp. v Assessor of City of Mount Vernon*, 15 AD3d 585 [2005]; *Matter of Pyramid Crossgates Co. v Board of Assessors of Town of Guilderland*, 302 AD2d 826, 828 [2003]). However, a failure to comply with 22 NYCRR 202.59 (b) prior to filing the notes of issue is not always a fatal defect (*see Matter of Eastern Hous. Assoc. v City Assessor of City of Watertown*, 12 AD3d 1035, 1036 [2004]; *Matter of Syms Corp. v Assessor of Town of Clarence*, 5 AD3d 984 [2004]), especially in a case where the property is not income producing (*see Matter of Ardsley Country Club v Assessor of Town of Greenburgh*, 24 Misc 3d 1118 [2009], citing *Matter of White Plains Props. Corp. v Tax Assessor of City of White Plains*, 58 AD2d 653, 654 [1977]; *see also Matter of Atlantic Ref. & Mktg. Corp. v Assessor of City of Ithaca*, 246 AD2d 875 [1998]).

A significant factor to consider is whether the municipality has suffered prejudice (*see Matter of Midway Shopping Ctr. v Town of Greenburgh*, 11 Misc 3d 1071[A], 2006 NY Slip Op 50501[U] [2006]; *Matter of Rose Mount Vernon Corp. v Assessor of City of Mount Vernon*, 1 Misc 3d 906[A], 2003 NY Slip Op 51530[U] [2003], *affd* 15 AD3d 585 [2005]). In the instant case, the appellants do not claim prejudice and, in any event, were not prejudiced because (1) they received the information when Al Turi sought BAR review, (2) this litigation was ongoing since the 1990s, and the parties were in communication with each other as to their estimates of value throughout those years, and (3) income is not relevant to the method advocated by the appellants for calculating the value of the property. Further, simultaneously with contending that the proceedings should have been dismissed for failure to complete the discovery necessary for trial, the Town argued that Al Turi was obligated pursuant to a stipulation between the parties to discontinue the proceeding relating to the 2000 tax year. Therefore, the appellants were not seeking a prompt trial of this dispute and, as late as 2006 when the motion to dismiss was made, there were issues outstanding which precluded a prompt trial.

Since the Town's appraised value for the tax years in issue— 2000, 2001, and 2002—in most instances, was significantly less than the value determined by the Assessor, and the Town acknowledges that the Assessor overvalued the property, the interests of justice were served by an adjudication of the proceedings on the merits (*see* 22 NYCRR 202.1 [b]). We further note, with respect to the statements of income and expenses

which were served and filed, that 22 NYCRR 202.59 (d) (1) does not define the term "filing" as filing with the County Clerk, and there is no requirement that a statement of income and expenses be filed with the County Clerk (*cf. Matter of Mendon Ponds Neighborhood Assn. v Dehm*, 98 NY2d 745 [2002]; 22 NYCRR 202.59 [g] [1] [i]). Further, there was no requirement that the statement of income and expenses be served upon the Town directly. Service upon the attorney for the Town was sufficient (*see* CPLR 2103 [b]). Accordingly, the Supreme Court properly denied that branch of the appellants' motion which was to dismiss the petitions relating to the tax years 2000, 2001, and 2002, for failure to comply with 22 NYCRR 202.59 (b).

Since this case was decided after a nonjury trial, "the power of this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses" (*Marini v Lombardo*, 79 AD3d 932, 933 [2010]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *O'Brien v Dalessandro*, 43 AD3d 1123 [2007]). In a tax certiorari proceeding challenging a real estate tax assessment, "a property valuation by the tax assessor is presumptively valid," which " 'obviates any necessity, on the part of the assessors, of going forward with proof of the correctness of their valuation' " (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187 [1998], quoting *People ex rel. Wallington Apts. v Miller*, 288 NY 31, 33 [1942]). Once the "petitioner challenging the assessment comes forward with 'substantial evidence' to the contrary, the presumption disappears" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 187, quoting *People ex rel. Wallington Apts. v Miller*, 288 NY at 33; *Matter of Carriage House Motor Inn v City of Watertown*, 136 AD2d 895, 895 [1988], *affd* 72 NY2d 990 [1988]), and the issue before the court is whether the petitioner established by a preponderance of the evidence that the property was overvalued (*see Matter of Garden City Plaza Assoc. v Mayor of Inc. Vil. of Garden City*, 302 AD2d 384, 385 [2003]). The Town acknowledges in its brief that "the record as a whole supported a finding of overvaluation," and its own appraiser concluded that the assessed valuations on many of the lots were too high. That conclusion alone rebutted the presumption that the assessments were valid (*see Farash v Smith*, 59 NY2d 952, 955 [1983]; *Matter of Bialystock & Bloom v Gleason*, 290 AD2d 607, 609 [2002]).

The appellants' primary objection to the valuation of the property was Al Turi's use of the capitalization of income method to

value lots 1.2, 7.2, 17.1, 17.2, 19, 20, 21.1, 21.22, 22, and 23.1. The appellants claim that the capitalization of income method should not have been used in this case, because any income derived from the landfill was from Al Turi's business, and not from the land itself.

"Assessments shall in no case exceed full value" (NY Const, art XVI, § 2), defined as what a seller under no compulsion to sell and a buyer under no compulsion to buy would agree was the subject property's price (see *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724, 729 [1996]; *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]). In *Matter of Allied Corp. v Town of Camillus*, relied upon by the appellants, the Court of Appeals noted that the best evidence of value was a recent sale "between a seller under no compulsion to sell and a buyer under no compulsion to buy," but in the absence of such evidence, "the courts have traditionally valued property by one of three methods: comparable sales, capitalization of income or reproduction cost less depreciation" (80 NY2d at 356).

"Evidence of comparable sales is generally the preferred measure of a property's value for assessment, but where there is insufficient relevant data, value may be determined by other methods" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d at 356). Under such circumstances, the reproduction cost less depreciation method may be used if the property may be deemed a specialty property (*id.*). Specialty properties are those which have been "*uniquely* adapted to the business conducted upon [them] or use made of [them] and cannot be converted to other uses without the expenditure of substantial sums of money" (*Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 240 [1977]; see *Matter of Allied Corp. v Town of Camillus*, 80 NY2d at 356).

The four criteria for determining whether the property is specialty property, to be valued based upon the reproduction cost less depreciation, are: "(a) the improvement must be unique and must be specially built for the specific purpose for which it is designed; (b) there must be a special use for which the improvement is designed and the improvement must be so specially used; (c) there must be no market for the type of property and no sales of property for such use; and (d) the improvement must be an appropriate improvement at the time of the taking or assessment and *its* use must be economically feasible and reasonably expected to be replaced" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d at 357). When the Assessor claims that the property is a specialty property, the petitioner bears

the burden of establishing by a preponderance of the evidence that the property does "not fit within the defining characteristics of specialty property" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 199 [1998]). In this case, Al Turi failed to meet that burden.

The property in issue in *Matter of Allied Corp. v Town of Camillus* (80 NY2d at 354) consisted of wastebeds surrounded by a buffer zone. In that case, the Court of Appeals held that a closed landfill should be valued as a specialty property, using reproduction cost less depreciation, on the ground that "there was ongoing use of the improvements and no ascertainable market" (*id.* at 360). The owner's claim that the facility was "100% functionally depreciated," since the wastebeds were full, was rejected by the Court, on the ground "that the wastebeds' primary purpose is *retaining* waste after receiving it and holding it until the solidification process has run its course" (*id.* at 358).

As in the instant case, the special purpose of the improvements on the property in *Matter of Allied Corp. v Town of Camillus* was to foster the ongoing process of waste containment during the storage and solidification process. Ascertaining the date when the solidification process was complete and the property could be used for another purpose was not relevant, as the relevant issue in a tax certiorari case is the value on the valuation date (*id.* at 357-358).

The reproduction cost less depreciation method should be used in valuing specialty property (*see Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d 591 [2007]) since, by definition, there is no market for the property (*see Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 197 [1998]). In the instant case, the Supreme Court concluded that the reproduction cost less depreciation method employed by the Town was "fundamentally flawed" because there was no market for the subject property, which was the very basis for using the reproduction cost less depreciation method.

Al Turi did not establish by a preponderance of the evidence that the lots which the Town valued as specialty property were adaptable to other uses. Rather, it contended that those lots were not adaptable to other uses. Since the improvements on Al Turi's property were not adaptable to "general industrial use," the Town properly characterized the property as specialty property (*Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d at 240). Further, in valuing the land component of the landfill lots, the Town's appraiser properly adjusted the value significantly downward based upon environmental contamination (*see Matter*

*of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724 [1996]).

Al Turi's appraiser concluded that the improvements on the landfill lots had no value, essentially because they were fully depreciated. An improvement with a substantial future useful life is not fully depreciated simply because it does not generate income. In the instant case, many of the improvements, including the leachate treatment plant, characterized as state-of-the-art, did not generate income, but their value should have been taken into account in characterizing the property as specialty property (*see generally Matter of Tenneco, Inc.-Tennessee Gas Pipeline Div. v Town of Cazenovia*, 104 AD2d 511, 513 [1984]).

In view of the foregoing, Al Turi failed to demonstrate that lots 1.2, 7.2, 17.1, 17.2, 19, 20, 21.1, 21.22, 22, 23.1, and 23.3 did not fit within the definition of specialty property (*see Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d at 199). Accordingly, we conclude that those lots should have been valued pursuant to the Town's appraisal. The Town's appraiser divided those lots into landfill lots, to wit, lots 17.1, 17.2, 20, 21.1, 21.22, 22, 23.1, and 23.3, whose improvements were valued using the reproduction cost less depreciation method, and landfill-related lots, to wit, lots 1.2, 7.2, and 19, which were valued by the comparable sales method, on the ground that the landfill-related lots could be used immediately for industrial development.

The parties agreed that the remaining lots, to wit, lots 1.3, 1.41, 1.42, 1.5, 1.6, 1.7, 18, 23.2, and 75, were vacant, and should be valued by examining comparable sales. Since the value of the vacant lots was properly determined based upon the comparable sales method, and the Supreme Court's findings as to value were within the range of the expert testimony, the findings of fact with respect to the value of those lots are affirmed (*see e.g. Matter of Brickman Estate at the Point, Inc. v Board of Assessors*, 85 AD3d 783 [2011]).

The parties' remaining contentions either are without merit or need not be addressed in light of our determination. Balkin, J.P., Belen, Hall and Miller, JJ., concur.