In January 2000, the State of New York appropriated, partially in fee and partially through permanent easement, several parcels of the claimant’s real property (hereinafter the appropriated property) for the purpose of expanding the Brooklyn-Queens Expressway. The appropriated property was part of a rail corridor owned by the claimant. In June 2000, the claimant filed a claim in the Court of Claims to recover damages for the taking of the appropriated property. The State appeals, on the ground of excessiveness, and the claimant cross-appeals, on the ground of inadequacy, from so much of the judgment of the *967 Court of Claims, made after a nonjury trial, as awarded damages for the permanent takings, both in fee and by easement.
“The measure of damages in a case involving the partial taking of real property is the difference between the value of the entirety of the premises before the taking and the value of the remainder after the taking” (Gyrodyne Co. of Am., Inc. v State of New York, 89 AD3d 988, 989 [2011]; see Diocese of Buffalo v State of New York, 24 NY2d 320, 323 [1969]; Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513 [2009]). “The measure of damages must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time” (Gyrodyne Co. of Am., Inc. v State of New York, 89 AD3d at 989 [internal quotation marks omitted]).
At a nonjury trial on the issue of damages, the claimant and the State each presented the testimony of experts with regard to valuation of the appropriated property. The experts agreed that the highest and best use of the appropriated property was as a rail corridor. They disagreed, however, as to the proper method for valuation.
The State’s expert advocated a cost, or reproduction cost less depreciation, approach to valuation, which is employed in valuing “specialty” properties (see generally Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 357 [1992]; Matter of Al Turi Landfill, Inc. v Town of Goshen, 93 AD3d 786 [2012]). However, the Court of Claims properly rejected this approach because, inter alia, the evidence demonstrated that the appropriated property did not constitute a specialty property. Additionally, the Court of Claims properly rejected the State’s lump-sum reduction of the market value of the appropriated property to 15% of the estimated value. Since the opinion of the State’s expert as to this particular issue was not supported with sufficient facts, figures, and calculations, his opinion in this regard lacked probative value (see Matter of County of Dutchess [285 Mill St.], 186 AD2d 891, 891-892 [1992]; Matter of Northville Indus. Corp. v Board of Assessors of Town of Riverhead, 143 AD2d 135, 136 [1988]).
“Having rejected the State’s appraisal, the trial court was bound to either accept the claimant’s appraisal or explain the basis for any departure” (Gyrodyne Co. of Am., Inc. v State of New York, 89 AD3d at 989; see Matter of City of New York [Reiss], 55 NY2d 885, 886 [1982]; Matter of City of New York v Estate of Levine, 196 AD2d 654, 655 [1993]).
The claimant’s expert, Charles W. Rex III, specialized in the appraisal of rail corridors. In offering his testimony and ap *968 praisal, he relied on, among other things, a number of scholarly articles on corridor valuation in support of his opinion as to the proper methodology for corridor valuation (see e.g. Charles F. Seymour, The Continuing Evolution of Corridor Appraising [Back to the Basics], Right of Way, May/June 2002 at 12-20; Arthur G. Rahn, The Enhancement Factor in Transportation Corridor Sales and Appraisals, Appraisal J., Jan. 1999 at 89-92; John P. Dolman and Charles F. Seymour, Valuation of Transportation!Communication Corridors, Appraisal J., Oct. 1978 at 509-522).
Rex valued the appropriated property pursuant to a comparable sales approach, which “is generally the preferred measure of a property’s value for assessment” (Matter of Allied Corp. v Town of Camillus, 80 NY2d at 356; see Matter of Al Turi Landfill, Inc. v Town of Goshen, 93 AD3d at 792). The specific comparable sales approach advocated by Rex was the “corridor valuation” method, which is, at its essence, a two-step process. First, the “across-the-fence” value (hereinafter the ATF value) of the land is estimated based on, among other things, the location of the corridor and market conditions. The ATF value is then multiplied by a “corridor factor.” According to Rex, the “purpose of the corridor factor is to convert [ATF] value into the value of the corridor. Into market value. The corridor factor measures the importance of the corridor.” In other words, when a property’s highest and best use is as a corridor, and the property is to remain as a corridor, that property will generally sell for more than the ATF value of the land, and the corridor factor figures this into the valuation.
The Court of Claims, in its decision dated August 26, 2010, upon which the judgment was entered, properly “accepted] the validity of the comparable sales method” advocated by Rex on behalf of the claimant. However, the court elected not to apply any corridor factor in reviewing the valuation. The Court of Claims’ determination in this regard was neither “supported by [the] evidence [nor] adequately explained by the court” (Matter of City of New York [Reiss], 55 NY2d at 886). Accordingly, we must remit the matter for a determination as to the appropriate corridor factor to be applied to the ATF value as estimated by the claimant’s expert, and for the entry of an appropriate amended judgment thereafter.
We also agree with the claimant that the Court of Claims erred in failing to award it direct damages for the State’s taking of permanent easements over those parcels of real property designated as Parcels 130A, 193F, 194J, and 195H. Rex testified, as supported by his supplemental appraisal report, that the *969 State’s acquisition of those permanent easements caused a loss of 50% of the value of those parcels. The State’s appraiser testified, as supported by his report, that the State’s acquisition of permanent easements only caused a 5% loss of their overall value. The Court of Claims, however, found no loss in value with respect to these parcels.
As a general matter, “[ulpon a condemnation of a permanent easement, the landowner is entitled to the difference in value of the premises without the burden of the easement and with the burden of the easement, together with the further direct and consequential damage, if any, occasioned to the lot arising from the use of the easement” (City of Yonkers v A. & J. Cianciulli, Inc., 117 NYS2d 792, 794 [1952]; see Matter of City of New York, 269 NY 64, 69-70 [1935]; Donaloio v State of New York, 99 AD2d 335, 338 [1984], affd 64 NY2d 811 [1985]). Upon the taking of a permanent easement, the damages must be determined based upon what the condemnor has the right to do under the terms of the easement as appropriated (see Morton v State of New York, 8 AD2d 49, 52 [1959]). On the evidence before the Court of Claims, we conclude that the State is correct that the claimant is entitled to 5% of the market value of the aforementioned parcels for the State’s taking of these permanent easements. Accordingly, upon remittal, the Court of Claims shall determine this amount, based on the ATF value of these parcels, as set forth in Rex’s supplemental report, and shall include, in its calculations, what it deems to be the appropriate corridor factor. Mastro, J.P., Skelos, Florio and Dickerson, JJ., concur.