# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**357**
**CA 14-00962**
PRESENT: SCUDDER, P.J., SMITH, CARNI, SCONIERS, AND WHALEN, JJ.

---

IN THE MATTER OF RITE AID CORPORATION,
PETITIONER-RESPONDENT,

V                                                      MEMORANDUM AND ORDER

TERIE HUSEBY, ASSESSOR, AND BOARD OF ASSESSMENT
REVIEW OF TOWN OF IRONDEQUOIT,
RESPONDENTS-APPELLANTS.
(APPEAL NO. 2.)

---

DAVIDSON FINK LLP, ROCHESTER (THOMAS A. FINK OF COUNSEL), FOR
RESPONDENTS-APPELLANTS.

ROBERT L. JACOBSON, PITTSFORD, FOR PETITIONER-RESPONDENT.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Monroe County (Matthew A. Rosenbaum, J.), entered May 28, 2014
in proceedings pursuant to RPTL article 7.  The order and judgment,
among other things, adjudged that the assessment of petitioner's
property, upon the rolls of assessment of the Town of Irondequoit for
the years at issue, be reduced.

It is hereby ORDERED that the order and judgment so appealed from
is reversed on the law without costs, and the petitions challenging
the assessments for the 2008/2009 through 2012/2013 tax years are
dismissed.

Memorandum:  Petitioner commenced these RPTL article 7
proceedings seeking review of the real property tax assessments for a
commercial property located in the Town of Irondequoit for the tax
years 2008/2009 through 2012/2013.  In appeal No. 1, respondents
appeal from an order granting the respective petitions and ordering
respondents to correct the assessment rolls and to refund the tax
overpayments with costs.  In appeal No. 2, respondents appeal from a
final order and judgment incorporating the decision.  We note at the
outset that appeal No. 1 must be dismissed inasmuch as the order
granting the petitions is subsumed in the final order and judgment in
appeal No. 2 (*see M&T Bank v Choice Granite Products Ltd.* [appeal No.
2], 115 AD3d 1163, 1164).

Petitioner is the lessee under a 20-year triple net lease of a
1.39 acre parcel of real property located at 689 East Ridge Road in
the Town of Irondequoit, which is improved by a 13,274-square-foot
single-tenant retail pharmacy.  Rent is $358,634 per annum or

approximately $27.02 per square foot.  The pharmacy building was constructed in 2002 under a build-to-suit arrangement with petitioner's predecessor, Eckerd Drugs.  The build-to-suit arrangement in this case involved the assemblage of two separate parcels of real property situated on a corner location in an established commercial corridor with good access from both roads.  Under the terms of the lease, petitioner is responsible for, among other things, the payment of real property taxes.  The property was sold in 2005 in what the parties agree was an arm's length sale for $4,903,634.  At all relevant times, the property was assigned an assessed value of $3,650,000 by respondent Terie Huseby, assessor of the Town of Irondequoit.  Petitioner commenced five proceedings pursuant to RPTL article 7 challenging those assessments.  A nonjury trial was conducted at which the parties presented expert testimony.  In granting the petitions, Supreme Court concluded, inter alia, that the 2005 sale of the subject property was not of "any probative value" in determining the fair market value of the fee simple interest in the property and that it was proper to disregard the actual rent in arriving at a value using the income capitalization method.  We reverse.

We note at the outset that respondents do not dispute that petitioner came forth with substantial evidence, in the form of the appraisal report and testimony of its expert, to rebut the presumption of validity of the tax assessments (*see generally Matter of Techniplex III v Town & Vil. of E. Rochester*, 125 AD3d 1412, 1412-1413).  Nor do respondents contend that the approach to valuation used by petitioner's expert, which rejects national chain drugstore comparables on the ground that they are "build-to-suit" and, thus, subject to above-market leases which encompass purchasing, often at a premium, and assembling various pieces of property, demolition and construction costs, is not plausible (*see Matter of Brooks Drugs, Inc. v Board of Assessors of City of Schenectady*, 51 AD3d 1094, 1095, *lv denied* 11 NY3d 710).

Within this framework, an appellate court is empowered to make new findings of value where the trial court " 'has failed to give to conflicting evidence the relative weight which it should have' " (*People ex rel. MacCracken v Miller*, 291 NY 55, 61, quoting *Matter of City of New York [Newton Creek]*, 284 NY 493, 497 [emphasis omitted]), giving due deference to the trial court's power to resolve credibility issues by choosing among conflicting expert opinions (*see Brooks Drugs, Inc.*, 51 AD3d at 1095).

It is well settled that real "[p]roperty is assessed for tax purposes according to its condition [and ownership] on the taxable status date, without regard to future potentialities or possibilities and may not be assessed on the basis of some use contemplated in the future" (*Matter of Addis Co. v Srogi*, 79 AD2d 856, 857, *lv denied* 53 NY2d 603; *see* RPTL 302 [1]; *Matter of BCA-White Plains Lanes v Glaser*, 91 AD2d 633, 634-635, *appeal dismissed* 59 NY2d 673).  Although several methods of valuing real property are acceptable, "the market value method of valuation is preferred as the most reliable measure of a

property's full value for assessment purposes" (*Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 731), because "[t]he best evidence of value, of course, is a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356, *rearg denied* 81 NY2d 784).  A recent sale has been characterized as evidence of the "highest rank" in determining market value (*Matter of F. W. Woolworth Co. v Tax Commn. of City of N.Y.*, 20 NY2d 561, 565 [emphasis omitted]; *see Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277, *rearg denied* 37 NY2d 924).  The scope of a "market" need not be limited to the locale of the subject property and, depending on the nature of the use, it may encompass national and/or international buyers and sellers (*see e.g. Matter of Saratoga Harness Racing v Williams*, 91 NY2d 639, 646).

In support of its case, petitioner presented the testimony of appraiser Christopher Harland, who valued the property unencumbered by any lease.  Harland employed the comparable sales approach and income capitalization approach in arriving at his valuation.  He valued the subject property at $1.44 million to $1.49 million on the relevant taxable status dates.  The properties he used for comparison in his analysis consisted primarily of commercial retail properties located in the same general geographic area.  None, however, were currently occupied by national pharmacy chains nor subject to build-to-suit leases.  Indeed, Harland's sales comparables consisted of a Dollar Tree store; a Staples office supply store; a retail bicycle shop; and a kitchen retail store.  Although Harland's appraisal recognized that a number of recent sales of retail drugstores had occurred in the region, he concluded that it was "not appropriate to use these sales" and gave them "little weight . . . in valuing the subject property."

On the other hand, respondents' expert, Ronald Rubino, testified, and his appraisal concluded, that there is an established national submarket for the sale and purchase of built-to-suit net lease national chain drugstores, which provides an abundance of drugstore comparable sales, both local and regional, for use in the sales comparison approach.  Respondents' expert testified that such a submarket is the subject of a national real estate publication which he incorporated into his appraisal.  The publication is published quarterly by PricewaterhouseCoopers, LLP, and provides detailed data for buyers and investors in numerous national submarkets including, inter alia, the National Net Lease Market, the National Medical Office Buildings Market, the National Retail Market, and the National Strip Shopping Center Market (*see* PwC Real Estate Investor Survey, http://www.pwc.com/us/en/asset-management/real-estate/publications/pwc-real-estate-investor-survey.jhtml [accessed June 18, 2015]).  Respondents' expert specifically referenced the "National Net Lease Market Report" in his testimony and appraisal.  Moreover, petitioner's expert also utilized the April 2005 "Net Lease Drug Store Market Report" as a source for capitalization rates and other market data.  That report is published by The Boulder Group, which describes itself as "a boutique investment real estate service firm specializing in single tenant net lease properties.  The firm provides a full range of

brokerage, advisory, and financing services nationwide to a substantial and diversified client base, which includes high net worth individuals, developers, REITs, partnerships and institutional investment funds" (The Boulder Group, http://bouldergroup.com/ [accessed June 18, 2015]).  Thus, we conclude that there is no serious dispute that the submarket identified and relied upon by respondents' expert exists, and sales and rental data for that submarket is readily available (see Brooks Drugs, Inc., 51 AD3d at 1095; Matter of Eckerd Corp. v Gilchrist, 44 AD3d 1239, 1241, lv denied 10 NY3d 707).  It is noteworthy that petitioner's expert also recognized that the boundaries of the applicable submarket "are not purely physical or geographical" and, "to the extent that the market is the meeting place for buyers and sellers of real estate of a given type, the participants who deal within its confines set the boundaries of the market."  Nonetheless, in his appraisal, petitioner's expert disregarded the applicable submarket and relied upon properties that are clearly outside of the well-recognized parameters of the net lease national drugstore market.

On the other hand, in reaching his valuation through the use of the sales comparison approach, respondents' expert identified and used nine commercial properties, eight of which were improved and occupied as national retail drugstore chain locations.  Those eight properties were clearly within the recognized parameters of the national net lease submarket.  The average sale price for those comparables was $4,924,378.  Respondents' expert testified that the recent sale of the subject property was a "very good indicator" of the market value of the subject property, and was the "best comparable" to which he gave the "most weight."  Petitioner's expert testified that the 2005 sale of the subject property played no role in his valuation.

Petitioner's expert also used the income capitalization method. When using that method, actual rental income is often, as a general rule, the best indicator of value (see Techniplex III, 125 AD3d at 1413; Matter of Schoeneck v City of Syracuse, 93 AD2d 988, 988; see also Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau, 45 NY2d 538, 543).  In reaching a valuation using the income capitalization method, petitioner's expert also rejected the actual contract rent, which he described as "substantially above market." Moreover, petitioner's expert rejected the rents of other net lease national drugstore properties in arriving at his determination of market rent.  Instead, petitioner's expert identified "market rent" by using the following properties:  a Goodwill Industries store and donation drop-off center, a non-profit corporation serving community needs; a Petsmart store; an Old Navy clothing retail store; a Gold's Gym; a Family Dollar retail store; and a Volunteers of America store, a nonprofit corporation that serves community needs and operates thrift or resale stores.  Petitioner's expert did not use any operating national chain drugstore-occupied properties in his determination of "market rent" and arrived at a market rent of $12.00 per square foot.

On the other hand, respondents' expert utilized 11 rental

comparables, nine of which were occupied and used as national chain drugstores in the applicable market.  The use of these comparables demonstrated that the adjusted comparable median market rent for these similar national chain drugstores was $36.76 per square foot, which yielded a valuation between $3,590,000 to $3,940,000 on the relevant valuation dates.

In light of the foregoing, we conclude that the failure of petitioner's expert to use the recent sale of the subject property, as well as readily available comparable sales of national chain drugstore properties in the applicable market, as evidence of value demonstrates the invalidity of the expert's conclusion with respect to the sales comparison valuation (see Matter of Thomas v Davis, 96 AD3d 1412, 1415, lv denied 21 NY3d 860).  We further conclude that petitioner's expert's use of sales not comparable to the subject and outside of the applicable market should have been rejected by the court as unreliable (see Matter of Adcor Realty Corp. v Srogi, 54 AD2d 1096, 1096, lv denied 41 NY2d 806).  Moreover, the failure of petitioner's expert to use the actual rent, negotiated at arm's length and without duress or collusion, as well as the failure to use similar rental comparables from the applicable submarket as evidence of value, demonstrates the invalidity of the expert's conclusions using the income capitalization method (see Matter of Conifer Baldwinsville Assoc. v Town of Van Buren, 68 NY2d 783, 785; see generally Techniplex III, 125 AD3d at 1413).  We thus conclude that the court's decision to credit the appraisal of petitioner's expert was against the weight of the evidence (see Matter of Rite Aid Corp. v Otis, 102 AD3d 124, 127, lv denied 21 NY3d 855; see also Matter of Kohl's Ill. Inc. #691 v Board of Assessors of the Town of Clifton Park, 123 AD3d 1315, 1317).

All concur except SCUDDER, P.J., who dissents and votes to affirm in the following memorandum:  I respectfully dissent for the reasons set forth in my dissent in Matter of Rite Aid Corp. v Haywood (___ AD3d ___ [July 10, 2015]).

Entered:  July 10, 2015                        Frances E. Cafarell
                                               Clerk of the Court