# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**351**
**CA 14-01385**
PRESENT: SCUDDER, P.J., SMITH, CARNI, SCONIERS, AND WHALEN, JJ.

---

IN THE MATTER OF RITE AID CORPORATION,
PETITIONER-RESPONDENT,

V                                              MEMORANDUM AND ORDER

STEPHEN HAYWOOD, ASSESSOR, AND BOARD OF
ASSESSMENT REVIEW OF TOWN OF WILLIAMSON,
WAYNE COUNTY, RESPONDENTS-APPELLANTS.
(PROCEEDING NOS. 1 & 2.)
------------------------------------------
IN THE MATTER OF RITE AID CORPORATION,
PETITIONER-RESPONDENT,

V

TOWN OF WILLIAMSON BOARD OF ASSESSMENT
REVIEW, ASSESSOR OF TOWN OF WILLIAMSON
AND TOWN OF WILLIAMSON, WAYNE COUNTY,
RESPONDENTS-APPELLANTS.
(PROCEEDING NO. 3.)

---

HACKER MURPHY, LLP, LATHAM (PATRICK L. SEELY, JR., OF COUNSEL), FOR
RESPONDENTS-APPELLANTS.

ROBERT L. JACOBSON, PITTSFORD, FOR PETITIONER-RESPONDENT.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Wayne County (Matthew A. Rosenbaum, J.), entered January 31,
2014 in proceedings pursuant to RPTL article 7.  The order and
judgment determined tax assessments for tax years 2009/2010 through
2011/2012.

It is hereby ORDERED that the order and judgment so appealed from
is modified on the law by dismissing the petitions challenging the
assessments for the 2009/2010 and 2011/2012 tax years and by reducing
the assessment for the 2010/2011 tax year to $3,610,100, and as
modified the order and judgment is affirmed without costs.

Memorandum:  Petitioner commenced these RPTL article 7
proceedings seeking review of the real property tax assessments for a
commercial property located in respondent Town of Williamson for the
tax years 2009/2010, 2010/2011, and 2011/2012.  In each of the
proceedings, respondents appeal from an order and judgment granting
the respective petitions in part and ordering respondents to correct

the assessment rolls and to refund the tax overpayments with interest. Respondents concede that the assessment for the 2010/2011 tax year should be reduced to $3,610,100.

Petitioner is the lessee under a 20-year triple net lease of a 2.36 acre parcel of real property located at 4061 Route 104 in the Town of Williamson, which is improved by a 14,690-square-foot single-tenant retail pharmacy.  Rent is $377,000 per annum or approximately $25.73 per square foot.  The pharmacy building was constructed in 2003 under a build-to-suit arrangement with petitioner's predecessor, Eckerd Drugs.  The build-to-suit arrangement in this case involved the assemblage of five separate parcels of real property situated on a corner lot with a traffic light.  Under the terms of the lease, petitioner is responsible for, among other things, the payment of real property taxes.  The property was sold in 2003 in what the parties agree was an arm's length sale for $4,650,000.  In 2009, 2010, and 2011, the property was assigned an assessed value of $3,750,000 by respondent Stephen Haywood, assessor of the Town of Williamson.  Petitioner commenced three proceedings pursuant to RPTL article 7 challenging those assessments.  A nonjury trial was conducted at which the parties presented expert testimony.  In granting the petitions in part, Supreme Court credited the appraisal and valuation approach of petitioner's expert and concluded, inter alia, that the 2003 sale of the subject property was of "no probative value" in determining the fair market value of the fee simple interest in the property.  We conclude that the court's decision to credit the appraisal of petitioner's expert was against the weight of the evidence, and we modify the order and judgment accordingly (*see Matter of Rite Aid Corp. v Otis*, 102 AD3d 124, 127, *lv denied* 21 NY3d 855; *see also Matter of Kohl's Ill. Inc. #691 v Board of Assessors of the Town of Clifton Park*, 123 AD3d 1315, 1317).

We note at the outset that respondents do not dispute that petitioner came forth with substantial evidence, in the form of the appraisal report and testimony of its expert, to rebut the presumption of validity of the tax assessments (*see generally Matter of Techniplex III v Town & Vil. of E. Rochester*, 125 AD3d 1412, 1412-1413).  Nor do respondents contend that the approach to valuation used by petitioner's expert, which rejects drugstore comparables on the ground that they are "build-to-suit" and, thus, subject to above-market leases which encompass purchasing, often at a premium, and assembling various pieces of property, demolition and construction costs, is not plausible (*see Matter of Brooks Drugs, Inc. v Board of Assessors of City of Schenectady*, 51 AD3d 1094, 1095, *lv denied* 11 NY3d 710).

Within this framework, an appellate court is empowered to make new findings of value where the trial court " 'has failed to give to conflicting evidence the relative weight which it should have' " (*People ex rel. MacCracken v Miller*, 291 NY 55, 61, quoting *Matter of City of New York [Newton Creek]*, 284 NY 493, 497 [emphasis omitted]), giving due deference to the trial court's power to resolve credibility issues by choosing among conflicting expert opinions (*see Brooks Drugs, Inc.*, 51 AD3d at 1095).

It is well settled that real "[p]roperty is assessed for tax purposes according to its condition [and ownership] on the taxable status date, without regard to future potentialities or possibilities and may not be assessed on the basis of some use contemplated in the future" (*Matter of Addis Co. v Srogi*, 79 AD2d 856, 857, *lv denied* 53 NY2d 603; *see* RPTL 302 [1]; *Matter of BCA-White Plains Lanes v Glaser*, 91 AD2d 633, 634-635, *appeal dismissed* 59 NY2d 673).  Although several methods of valuing real property are acceptable, "the market value method of valuation is preferred as the most reliable measure of a property's full value for assessment purposes" (*Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 731), because "[t]he best evidence of value, of course, is a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356, *rearg denied* 81 NY2d 784).  A recent sale has been characterized as evidence of the "highest rank" in determining market value (*Matter of F. W. Woolworth Co. v Tax Commn. of City of N.Y.*, 20 NY2d 561, 565 [emphasis omitted]; *see Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277, *rearg denied* 37 NY2d 924).  The scope of a "market" need not be limited to the locale of the subject property and, depending on the nature of the use, it may encompass national and/or international buyers and sellers (*see e.g. Matter of Saratoga Harness Racing v Williams*, 91 NY2d 639, 646).

In support of its case, petitioner presented the testimony of appraiser Christopher Harland, who concentrated his analysis on the fee simple value of the property, unencumbered by any leases.  Harland employed the comparable sales approach and income capitalization approach in arriving at his valuation.  He valued the subject property at $1.0 million to $1.1 million on the relevant taxable status dates.  The comparable properties he used in his analysis consisted primarily of commercial retail properties located in the same general geographic area.  None, however, were currently occupied by national pharmacy chains nor subject to build-to-suit leases.  Indeed, Harland's sales comparables consisted of a Dollar Tree store; a Staples office supply store; a Salvation Army thrift shop; a retail bicycle shop; and a Dollar General store.  Although Harland's appraisal recognized that 12 recent sales of retail drugstores had occurred in the region, he concluded that it was "not appropriate to use these sales" and gave them "little weight . . . in valuing the subject property."

On the other hand, respondents' expert, Ronald Rubino, testified, and his appraisal concluded, that there is an established national submarket for the sale and purchase of built-to-suit net lease national chain drugstores, which provides an abundance of drugstore comparable sales, both local and regional, for use in the sales comparison approach.  Notably, petitioner's expert agreed that there is a wholly separate national net lease drugstore real estate submarket and further acknowledged that his appraisal cited to and relied upon a national "Net Lease Drugstore Market Report."  This report is published by The Boulder Group, which describes itself as "a boutique investment real estate service firm specializing in single tenant net lease properties.  The firm provides a full range of brokerage, advisory, and financing services nationwide to a

substantial and diversified client base, which includes high net worth individuals, developers, REITs, partnerships and institutional investment funds" (The Boulder Group, http://bouldergroup.com/ [accessed June 18, 2015]).  Respondents' expert also included a reference to The Boulder Group net lease market report in his appraisal.  In other words, there is no serious dispute that the submarket identified and relied upon by respondents' expert exists, and sales and rental data for that submarket are readily available (*see Brooks Drugs, Inc.*, 51 AD3d at 1095; *Matter of Eckerd Corp. v Gilchrist*, 44 AD3d 1239, 1240-1241, *lv denied* 10 NY3d 707).  It is noteworthy that petitioner's expert also recognized that the boundaries of the applicable submarket "are not purely physical or geographical" and, "to the extent that the market is the meeting place for buyers and sellers of real estate of a given type, the participants who deal within its confines set the boundaries of the market."  Nonetheless, in his appraisal, petitioner's expert disregarded the applicable submarket and relied upon properties that are clearly outside of the well-recognized parameters of the net lease national drugstore submarket.

On the other hand, in reaching his valuation through the use of the sales comparison approach, respondents' expert identified and used nine commercial properties, eight of which were improved and occupied as national retail drugstore chain locations.  Those eight properties were clearly within the recognized parameters of the national net lease drugstore submarket.  The average sale price for those comparables was $4,716,648.  Respondents' expert gave the recent sale of the subject property the "most weight" as the "best indicator" of the market value of the subject property.  Petitioner's expert considered the 2003 sale of the subject property but "did not put any weight on it."

Petitioner's expert also used the income capitalization method.  When using that method, actual rental income is often, as a general rule, the best indicator of value (*see Techniplex III*, 125 AD3d at 1413; *Matter of Schoeneck v City of Syracuse*, 93 AD2d 988, 988; *see also Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau*, 45 NY2d 538, 543).  In reaching a valuation using the income capitalization method, petitioner's expert also rejected the actual contract rent, which he described as "substantially above market."  Moreover, petitioner's expert rejected the rents of other net lease national drugstore properties in arriving at his determination of market rent.  Instead, petitioner's expert identified "market rent" by using the following properties:  a Goodwill Industries store and donation drop-off center, a nonprofit corporation serving community needs; a Petsmart store; an Old Navy clothing retail store; a Family Dollar retail store; and a Volunteers of America store, a nonprofit corporation that serves community needs and operates thrift or resale stores.  Petitioner's expert did not use any operating national chain drugstore-occupied properties in his determination of "market rent" and arrived at a market rent of $8.00 per square foot.

On the other hand, respondents' expert utilized eight rental

comparables, seven of which were occupied and used as national chain drugstores.  The use of those comparables demonstrated that the adjusted comparable median market rent for similar national chain drugstores was $33.86 per square foot, which yields a valuation of $4,130,000 for July 1, 2008, and $3,760,000 for July 1, 2009.

In light of the foregoing, we conclude that the failure of petitioner's expert to use the recent sale of the subject property as well as readily available comparable sales of national chain drugstore properties in the applicable submarket as evidence of value demonstrates the invalidity of the expert's conclusion with respect to the sales comparison valuation (*see Matter of Thomas v Davis*, 96 AD3d 1412, 1415, *lv denied* 21 NY3d 860).  We further conclude that the use of sales not comparable to the subject and outside of the applicable market should have been rejected by the court as unreliable (*see Matter of Adcor Realty Corp. v Srogi*, 54 AD2d 1096, 1096, *lv denied* 41 NY2d 806).  Moreover, the failure of petitioner's expert to use the actual rent, negotiated at arm's length and without duress or collusion, as well as the failure to use similar rental comparables from the applicable market as evidence of value, demonstrates the invalidity of the expert's conclusions using the income capitalization method (*see Matter of Conifer Baldwinsville Assoc. v Town of Van Buren*, 68 NY2d 783, 785; *see generally Techniplex III*, 125 AD3d at 1413).

All concur except SCUDDER, P.J., who dissents and votes to affirm in the following memorandum:  I respectfully dissent.  In my view, the valuation determination made by Supreme Court should be upheld, and I would therefore affirm the order and judgment.  While it is well established that "a property valuation by the tax assessor is presumptively valid" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187), I agree with the majority that petitioner came forward with substantial evidence to rebut the presumption by submitting "a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196; *see Matter of Rite Aid Corp. v Otis*, 102 AD3d 124, 125-126, *lv denied* 21 NY3d 855).  Once that presumption of validity is rebutted, "a court must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*FMC Corp.*, 92 NY2d at 188; *see Rite Aid Corp.*, 102 AD3d at 126).

In tax certiorari proceedings, such as the one at issue on this appeal, the Court of Appeals has specifically held that the Appellate Division " 'may not set aside a finding of value made at Special Term, unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or *unless it appears that the court at Special Term has failed to give to conflicting evidence the relative weight which it should have* and thus has arrived at a value which is excessive or inadequate' " (*People ex rel. MacCracken v Miller*, 291 NY 55, 61; *see Matter of Adirondack Mtn.*

*Reserve v Board of Assessors of the Town of N. Hudson*, 106 AD3d 1232, 1237; *Matter of Universal Packaging v Assessor of City of Saratoga Springs*, 259 AD2d 875, 875; *cf. Matter of Kohl's Ill. Inc. #691 v Board of Assessors of the Town of Clifton Park*, 123 AD3d 1315, 1317; *Matter of Al Turi Landfill, Inc. v Town of Goshen*, 93 AD3d 786, 791, *lv denied* 19 NY3d 815).

The crux of this appeal as well as the appeals in *Matter of Rite Aid Corp. v Huseby* (___ AD3d ___ [July 10, 2015]) and *Matter of Rite Aid Corp. v Huseby* (___ AD3d ___ [July 10, 2015]) are the method and manner of valuing first-generation, build-to-suit retail drugstores for tax assessment purposes. Petitioner's expert, Christopher Harland, concluded that the value of the leased fee interest, i.e., the value of the property with the lease, is different from the value of the fee simple interest, i.e., the value of the property itself without any attendant lease. He opted to use the value of the fee simple interest only and thus used retail properties not subject to long-term retail drugstore leases as comparables. The majority concludes that Harland's opinions and valuations are invalid because he used commercial retail properties instead of first-generation build-to-suit pharmacies in his sales comparison and income capitalization analyses. Harland, however, explained his reasons for doing so. As was stated succinctly by the Third Department in a similar appeal in which Harland's valuation method was credited, "[t]he exclusion of national retail drug stores from Harland's analysis was premised upon his designation of those properties as 'build-to-suit,' meaning that they often have above-market leases attributable to premiums being paid to acquire the land, as well as assembly, demolition and construction costs" (*Matter of Eckerd Corp. v Burin*, 83 AD3d 1239, 1242; *see Matter of Eckerd Corp. v Semon*, 35 AD3d 931, 934). Moreover, the testimony at the nonjury trial established that the price of the land before the retail drugstore was built was $1.59 million, and a similar retail drugstore, the lease of which had expired, had recently sold for only $1.4 million.

Respondents' expert, Ronald Rubino, gave considerable weight to the 2003 sale of the property for $4.65 million. At that time, however, the property was subject to a 20-year retail drugstore lease in the amount of $377,000 per year. In his sales comparison and income capitalization analyses, Rubino relied almost exclusively on first-generation, build-to-suit retail drugstores still subject to lease provisions.

Each expert used the sales comparison and income capitalization methods of valuation, but the fundamental difference in whether to consider the lease in their respective analyses explains their different valuations. Both approaches to valuation have been upheld by the Third Department and, where trial courts have accepted Harland's valuations, the Third Department has generally affirmed (*see e.g. Eckerd Corp.*, 83 AD3d at 1242-1243; *Matter of Eckerd Corp. v Semon*, 44 AD3d 1232, 1234; *Eckerd Corp.*, 35 AD3d at 934). Where trial courts have rejected Harland's valuations, the Third Department has also generally affirmed (*see Matter of Rite Aid of N.Y. No. 4928 v*

*Assessor of Town of Colonie*, 58 AD3d 963, 966, *lv denied* 12 NY3d 709; *Matter of Brooks Drugs, Inc. v Board of Assessors of City of Schenectady*, 51 AD3d 1094, 1095-1096, *lv denied* 11 NY3d 710; *Matter of Eckerd Corp. v Gilchrist*, 44 AD3d 1239, 1240, *lv denied* 10 NY3d 707). Notably, however, even when a trial court had rejected Harland's valuation, the Third Department wrote that Harland had "articulated a plausible reason for his failure to use the type of comparables adopted by" the respondent's expert and that he had "put forth a persuasive case for [his] . . . valuation[]" (*Rite Aid of N.Y. No. 4928*, 58 AD3d at 966).

The Third Department has concluded that the decision whether to credit Harland's testimony on the valuation of retail drugstore properties is "a credibility determination that [the Court] decline[s] to disturb" (*id.; see Eckerd Corp.*, 83 AD3d at 1243; *Eckerd Corp.*, 44 AD3d at 1241). The one exception is *Rite Aid Corp.* (102 AD3d 124). In that case, the trial court concluded that, because the recent sale price of the subject property was consistent with the value of the property as determined by respondents' expert, the trial court's "decision to credit the appraisal offered by petitioner was against the weight of the evidence" (*id.* at 127). While that case involved circumstances similar to the circumstances at issue in the instant appeal, I would decline to follow that decision. There, as here, Harland explained his reasoning for rejecting recent sales, i.e., that such sales do not reflect the value of the fee simple interest but, rather, inflated above-market leases. I thus conclude that, if one were to credit Harland's reasoning, a recent sale of the subject property while the lease was still in effect would not affect the valuation of the fee simple interest in the property.

Here, the court agreed with Harland's valuation, concluding that the lease was nothing more than a contract, i.e., "an intangible property right," not subject to taxation under RPTL 300. "Given that Harland provided a plausible reason for not relying on [the 2003 sale or] data from other national retail pharmacies in the area, [I] cannot say that [the court's] decision to credit Harland's report and testimony over [Rubino's] was against the weight of the evidence" (*Eckerd Corp.*, 35 AD3d at 934). I would thus decline to disturb "[t]he court's ultimate finding concerning the value of the property [because it] is within the range of the expert testimony and supported by substantial evidence, and the court adequately explained the basis for its ultimate finding" (*Matter of Markham v Comstock*, 38 AD3d 1262, 1263; *see Universal Packaging*, 259 AD2d at 875; *cf. Rite Aid Corp.*, 102 AD3d at 126-127).

Entered:  July 10, 2015                      Frances E. Cafarell
                                             Clerk of the Court